### RING v. ASHWORTH et al.

A court of equity possesses jurisdiction to correct a mistake in a written contract, and then to decree a specific performance of the contract as corrected.

The admission of parol evidence to show fraud or mistake in a written contract, forms an exception to the general rule, which excludes such evidence to control or vary a written contract.

While such proof is admissible, it is equally true that the mistake must be made entirely clear, and established by the most satisfactory proof.

A complainant in chancery, may ask for the correction of a mistake in a written contract, and that it be specifically enforced, when so corrected.

Ring v. Ashworth et al.

A party *seeking* a specific performance of a written agreement, stands in no different position as to his right to have a mistake in the contract corrected, than a party *resisting* such specific performance.

Where in a proceeding to enforce the specific performance of a contract to convey real estate, it appeared that the land was described in the contract as follows: "fifty-nine 37-100 acres of land, being so much of the west half of the northeast quarter of section twelve, in township eighty-one, north of range six of the fifth principal meridian;" and where it was objected that the contract was void, for uncertainty in the description of the land; *Held,* That the description was not so uncertain as to render the contract void.

## *Appeal from the Clinton District Court.*

THIS is a bill in chancery by the vendee, seeking to reform, and also to compel the vendor to specifically perform, a written contract for the conveyance of certain real estate. The respondents demurred to the bill, for the following reasons :

1. That the court had no jurisdiction to correct the mistake in the contract, and then decree a specific performance of the contract, when so corrected.

2. That the description of a part of the land, was so indefinite, that no particular tract of land is, or can be, designated by metes and bounds.

The demurrer was sustained, and the complainant refusing to amend his bill, the same was dismissed. The complainant appeals.

*Leffingwell & Cotton,* for the appellant.

The right of a court of equity to correct a mistake in a contract for the sale of land, and enforce a specific performance, according to the original intention of the parties, is fully recognized by the authorities. Story's Equity, § 160 ; Adams' Equity, 260, and notes; *Bradford* v. *Union Bank,* 13 Howard, U. S. 57 ; *Wall* v. *Arlington,* 13 Geo. 88 ; *Gillespie* v. *Moore,* 2 John. Ch. 144 ; *Bellows* v. *Stone,* 14 N. H. 175 ; *Staplybun* v. *Scott,* 13 Ves. 425. And when by a part performance, the contract has been executed, all the authorities agree that this right vests in the court. *Woollam* v. *Hearn,*

2 Leading Cases in Equity, part 1, 571; Adams' Equity, 260, and note.

The objection that one piece of land is indefinitely described, cannot prevail. This 59 37-100 acres, was the vendor's entire interest in the eighty acre tract of land which is accurately described according to the government survey, and if some other person held the balance of that tract of land, as tenant in common with Ashworth, is it not proper for Ashworth to sell his interest in that tract of land? Again, if Ashworth owned the whole eighty acre tract, could he not sell the complainant the undivided three-fourths of it? It seems to us too obvious for argument, that he could.

The rule of construction of deeds, is laid down in *Boardman et al.* v. *The Lessees of Ford et al.*, 6 Peters, 345, as follows: "If the lands granted be so inaccurately described as to render its identity wholly uncertain, it is admitted that the grant is void. The meaning of the parties must be ascertained by the tenor of the writing, and not by looking at a part of it; and if a latent ambiguity arise from the language, it may be explained by parol." If this be the correct rule, the plaintiff's bill should not have been dismissed, but the ambiguity as to the interest sought to be conveyed to complainant in the eighty acre tract of land, could have been by him shown by parol to have been an undivided interest of 59 37-100 acres, in said accurately described eighty acres, which said eighty acre tract, is the least known legal subdivision which will answer the call for 59 37-100 acres, and which is the only fair, legal construction, which can be placed upon the contract.

*Whitaker & Grant*, for the appellees.

This was a bill in equity to correct a mistake in a written contract, to convey certain pieces of land, and to specifically enforce the contract as corrected. The defendant demurred to the bill on two grounds:

1. A court of equity had no jurisdiction to correct a mistake in a *contract*, and then enforce it, as corrected.

2. Because as to one of the tracts of land, there was no description definite enough to describe the land.

On the first point, the appellants refer to *Bradford* v. *Union Bank*, 13 Howard, 57. No such point arose in the case. *Wall* v. *Arlington*, 13 Georgia, 88. This was to correct a mistake in a *deed*. *Gillaspie* v. *Moore*, 2 John. Ch. 585; *Bellows* v. *Stone*, 14 N. H. 175. This was to correct a mistake in a mortgage, a deed. In fact, it was a bill to redeem a mortgage. *Napoleon* v. *Scott*, 13 Vesey, 425. This authority is on our side of the case. What is said by KENT, in *Gillespie* v. *Moore*, is *obiter*. The question was not before the court.

The authorities in England show one unbroken stream, that there is a difference between a party seeking, and a party resisting a specific performance. And in the case of *Woollam* v. *Hearn*, 7 Vesey, 211, cited and commented upon, in 1st part 2 White & Tudor's Equity Cases, 510, it is laid down, that a plaintiff cannot show a parol variation of a contract to convey, and then have equity to enforce it, because it is against the statute of frauds for him to do so.

"By the rule of law," (Leading Cases, 514 top, 361 margin,) "independent of the statute, parol evidence cannot be received to contradict a written agreement. To admit it for the purpose of proving that the written agreement does not contain the real agreement, would be to receive it for every purpose. It was to shut out this inquiry, that the statute of frauds was adopted." To the same point, are *Higginson* v. *Clowes*, 15 Vesey, 516; *Clinan* v. *Cook*, 1 Sch. & Lef. 38, 39; *Clowes* v. *Higginson*, 1 Vesey & B. 524; *Winch* v. *Winchester*, 1 Ib. 375; *Clarke* v. *Grant*, 14 Vesey, 519; *Rich* v. *Jackson*, 6 Ib. 335; *Brown* v. *Clancey*, 4 Black. 514; *Ogilvie* v. *Foljambe*, 3 Merivale, 53, 63; *Townsend* v. *Stangroom*, 6 Vesey, 328; *Baker* v. *Paine*, 1 Ib. 457; *Gordon* v. *Uxbridge*, 2 Maddox, 106; *Allyland* v. *Sitnell*, 1 Younge & Collyer, 559, 582; *Maurer* v. *Bach*, 6 Hare, 443; *Nurce* v. *Lord Vernon*, 13 Beavan, 254. In *Allyland* v. *Sitnell*, 1 Y. & C. 582, the judge says: "I confess I should have great difficulty in holding this could be done, because I cannot help feeling,

that in case of an executory agreement, first to reform and then to decree an execution of it, would be virtually to repeal the statute of frauds."

In all the American cases, where the question was properly before the court, the same decision, for the same reason, has been made. *Brooks* v. *Wheelock*, 11 Pickering, 439; *Osborne* v. *Phelps*, 19 Conn. 63; made after Judge KENT's *obiter* in *Gillespie* v. *Moore*, and STORY's approval; *Westbrook* v. *Harbem*, 2 McCord's Eq. 112; *Miller* v. *Chitwood*, 1 Green. C. 199; *Best* v. *Stone*, 2 Sand. Ch. 298, a recent decision in New York; *Elder* v. *Elder*, 10 Maine, 80, which reviews *Gillaspie* v. *Moore*. The note of Hare in *Woolam* v. *Hearn*, is very able and deserves examination.

The citation of the other side, about part performance, is erroneous, both as to page and principle; the page is 518 top, 366 margin, right column near the bottom, and is this: "Where, however, a parol *variation* has been *part performed*, a specific performance of the written agreement, with the variation, will be decreed." Here lies the reason of the decisions of equity in correcting mistakes in deeds—because the vendee has possession of the land intended to be conveyed. In the case at bar, the part performance was on the written agreement, not the parol variation. We think this question would have more properly arisen on an answer, but as the plaintiff knew the defendant would deny any mistake, we adopted this mode to hasten a decision.

One word as to the demurrer for want of description. The authority cited is so strongly against the plaintiff, that we shall not trouble the court with others. Will the counsel on the other side, tell us what part of eighty acres is "59 37-100," acres,—where does it lie? in the north part, the south part, the east, or west? Where does the boundary begin, and where end?

WRIGHT, C. J.—Two questions are presented in this case. Complainant alleges in his bill, that one parcel of the land sold him by respondents, was by mistake misdescribed in the written contract. He therefore prays, that this mistake

may be corrected, and that respondents may be decreed to convey the parcel intended and designed to be sold, which is specifically set out. In the argument, the parties have treated this averment as denied by the answer, and the question made is, that a court of equity has no jurisdiction to correct a mistake in a contract, and then decree its specific performance as corrected.

On this question, the authorities are not uniform, but we think the better reasoning is in favor of the prayer of this bill, and against the position assumed by respondents. The general rule, that excludes parol evidence to vary or control written contracts, is well understood. Where, however, the terms or stipulations of a contract have been procured, suppressed, or omitted, by fraud, or imposition, courts of equity have not hesitated to grant relief, notwithstanding that to admit parol proof of such suppression or omission, may be said to violate the general rule upon which parol evidence is excluded.

To allow the fraud and imposition to be thus proved, however, is regarded as a proper exception to the general rule ; for the rule and exception are alike founded upon that principle, which would "suppress frauds and promote general good faith and confidence, in the formation of all contracts." To reject such evidence entirely, would be to allow the general rule, which was designed to suppress *fraud*, " to be the most effectual promotive and encouragement of it." And upon the same ground it is, that equity interferes in cases of mistake.

" A court of equity would be of little value, if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischief, contrary to the intention of the parties. It would be to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake, to *resist* the claims of justice, under the shelter of a rule formed to promote it. In a practical view, there would be as much mischief done by refusing relief in such cases, as there would be introduced by allowing parol evidence in all

cases, to vary written contracts." Cases of fraud and mis-
take, then, properly form exceptions to the general rule,
which excludes parol evidence to control or vary the written
contract; and though exceptions, they stand upon the same
policy as the rule itself. But while such proof is admissible,
it is equally true, that the mistake must be made entirely
clear, and established by the most satisfactory proof. In the
*Marquis of Townsend* v. *Stangroom*, 6 Vesey, 328, Lord
ELDON said, that he owned that those who undertook to rec-
tify an agreement, by showing a mistake, undertook a task
of great difficulty, but he could not say that such evidence
was incompetent. And in *Gillespie* v. *Moore*, 2 Johns. Ch.
596, the chancellor says, that " the cases concur in the strict-
ness and difficulty of the proof, but still they admit it to be
competent ; and the only question is, does it satisfy the mind
of the court ?" And to the same effect, are the authorities
generally. Story's Eq. Jur. §§ 152, 162 and note 1, to
§ 161 ; *Keiselbrack* v. *Livingston*, 4 Johns. Ch. 144 ; *Bradford*
v. *Union Bank*, 13 How. 57.

Assuming then, that parol proof is admissible to show the
mistake, is it competent for complainant to ask for such cor-
rection, and a specific performance of the contract ? It is said
in the argument, that the rule is different where a party is
*seeking*, from what it is when he is *resisting*, a specific perform-
ance, and this distinction appears to be recognized by the
English authorities. And it is therefore claimed, that while
the respondent may be allowed to show in defence that there
was a mistake in the written agreement, and thus resist the
specific performance as prayed ; and while equity might for
him, reform and correct the contract, whether the alleged
mistake was set up by answer or cross bill, yet the same re-
lief will not be extended to the party who, as *complainant*,
seeks similar relief. To our minds, there is no room for this
distinction. So far as the introduction of proof to show mis-
take, may be said to violate the statute of frauds, it must be
very evident that it can make no difference, whether it comes
from the complainant or respondent. And the same is true,
where the objection is that it tends to contradict or vary the

written agreement. There is certainly as much good sense and justice in saying, that a complainant shall have the right to insist upon the specific performance of his bond as written, without change, by the introduction of parol proof, as there is in giving to respondent such right, and denying it to complainant. And why, on the other hand, the complainant, if a mistake has occurred to his prejudice, may not set it up, when *seeking* relief, in like manner as the respondent may when resisting the relief, we cannot conceive. As we view the mutual rights of the parties in a court of equity, and the jurisdiction and duty of the chancellor, the distinction is narrow, and unsupported by either reason or justice.

It is said, that a court of equity is not like a court of law, bound to enforce a written contract; that it may exercise its discretion, and where a specific performance is sought, may leave the party to his legal remedy; and that, therefore, if the respondent by his answer, insists upon a mistake in the written agreement, the chancellor may correct it as claimed by him, and base his decree upon the agreement as thus corrected, rather than either dismiss the bill entirely, or grant the strict prayer of the bill, which appears by the answer and proof to be against conscience and justice. But, if equity will thus guard the respondent, when such decree would be inequitable, it would seem but reasonable, and a legitimate part of the same doctrine, that complainant should in like manner, be relieved against any mistake in the contract, and that relief granted him which may seem just and conscientious. It is not controverted, but that he might be relieved, by having a contract founded in mistake of material facts, set aside, canceled, or modified. But it is objected, that he cannot reform and so vary it by parol evidence, and then have it specifically performed, as thus varied and established. We think the doctrine is based, in most of the cases, upon the impropriety of admitting parol evidence to contradict a written agreement. And it is well said in the note to section 161, Story's Eq. Juris., that "this rule is not more broken in upon by the admission of it, for the complainant, than it is by the admission of it for the respondent. And

the same is true, where the objection is, that such proof, and the granting of such relief, is in violation of the statute of frauds; for it requires no argument to show, that it would be quite as inconsistent to allow the respondent to seek that shelter against a complainant seeking the specific performance of a contract, and the correction of a mistake, as to enforce a contract against a respondent, which embodies a mistake to his prejudice." Indeed, if the jurisdiction of courts of equity to reform written contracts, and to decree relief thereon, is once acknowledged, (as it is most clearly by the books), there is no principle upon which the cases, which make a distinction between the rights of complainant and respondent, can be supported.

It is also claimed by respondents, that the case of *Bradford* v. *Union Bank*, 13 Howard, 57, is not pertinent to the question before us. A brief reference to it, however, will show that it recognizes the rule contended for by complainant. Several of the English authorities are there cited, which are admitted to refer more particularly to the right of defendant, to have a decree for a specific execution of the agreement, according to the answer, so that he may be saved the expense of a cross bill, even against the claim of the complainant to have his bill dismissed. But, says the court, " the same principle seems to be equally applicable to the complainant, when he insists on the decree for a specific performance of the contract, as established by the proof, although different from that set up in the bill. Indeed, we perceive no valid distinction between the two cases. In both, the contract of course, when ascertained and conformed to the real understanding of the parties, must be such a one as the court deems fit and proper to be enforced,"—referring to 2 Danl. Pr. 1001, 1002; *London and Birmingham Railway Co.* v. *Trenton*, Craig & Phil. 62. This ruling goes even farther than is necessary for this case.

If a complainant may insist upon a specific performance of the contract, as established by the proof, although different from that set up in his bill, much more clearly may he do so, when he establishes by proof, that contained in the

bill, though that may vary from the one set out in the written agreement. And this right of the court, to reform the contract, and decree relief, extends to those which are executory, as well as those executed. "Hence," says Story, in section 159, Eq. Juris., "in preliminary contracts for conveyances, settlements, and other solemn instruments, the court acts efficiently by reforming the preliminary contract itself, and decreeing a due execution of it, as reformed, if no conveyance or other solemn instrument, in pursuance of it, has been executed. And if such conveyance or instrument, has been executed, it reforms the latter also, by making it such as the parties originally intended." See also *Gillespie* v. *Moore*, *supra*, and the authorities there cited; and also, 4 Johns. Ch. R. 144; Story's Eq. Pl. § 394; *Warburton* v. *Lauman*, 2 G. Greene, 420.

The second, and only other question in the case is, whether the written contract, as to one parcel of the land, is void for uncertainty in its description? This tract is described as follows: "fifty-nine 37-100 acres of land, being so much of the west half of the northeast quarter of section twelve, (12), in township No. eighty-one, (81), north of range six, (6), of the 5th P. M." Counsel have argued this question very briefly, and cite but few authorities. We have, however, examined it with some care, and conclude, that for the purposes of this case, such description is not so uncertain as to render the contract, as to it, void. If this was an action of right, brought for a specific portion of this eighty, and plaintiff, to prove his title, had introduced his deed containing this description, the question, we think, would have been different. In that case, the court could not have ascertained from his deed, that he had title to the identical portion claimed by his petition. And yet, between him and his grantor, the deed would have been sufficient to pass that amount of interest in the eighty acres. Under such a deed, as between them, he would have a *known interest* in said west half of the northeast quarter, &c. It might not be a known interest, in *exact location*, but definitely so as to *amount*. It would certainly have been as much so, as if his deed had said

one-third, one half, or two-thirds, of such eighty. Under such a deed, we cannot believe that the grantor could claim that his grantee had no title as against him. And if this be true, how is it different as between them, whether the deed describes the amount of interest in *acres*, instead of by fractional parts?

And when considered as an *agreement* to convey, between the parties to it, we think the question presents even less difficulty. As a starting point, we have in the contract a specified and known eighty acres, clearly described and located, a definite portion of which, in number of acres, respondents sell, and undertake to convey to complainant. There is, therefore, no difficulty in ascertaining where to find the land, for we know it is to be so much of the eighty acres. But, it is asked, from what part is this fifty-nine 37-100 acres to be taken? where will the boundary commence, at the east, west, north or south line, or at what corner of the eighty? For the purposes of this case, is it material to answer these inquiries, or does it necessarily follow that this amount is to be taken from any particular portion of the tract? Complainant purchased, and respondent undertook to make him a deed to, "fifty-nine 37-100 acres of land, being so much of the west half," &c. For anything that is shown, they may have owned an undivided interest to this amount in that tract; or they may have title to this extent, to a specific portion of it, and in either event, why should they not be decreed to convey it as required by their undertaking?

By their bond, they covenant that they have title to this number of acres in that eighty acre tract; in the same instrument they acknowledge the receipt of a portion of the purchase money; and how can they claim that the contract is void for uncertainty, when complainant insists that they shall be required to convey by the very description used in their contract? It seems to us, that it is not for them to avoid their undertaking, on any such ground, or that they should not object, while he only asks that they shall convey to him that interest in a certain tract of land, which they undertook to convey. After he obtains this title, it may be-

come a question between him and the person holding title to the remaining portion of the eighty, as to what part or portion each takes, and in that case the description used may become of more importance.   He may have to institute further proceedings, by his suit for partition or otherwise, to settle and definitely fix his rights, but these are after consid- erations, in which these respondents, as far as we can see, have now no interest.   At present, the complainant elects to insist upon a conveyance of the land, by the description used in the bond.   This, we think, is his right.

Decree reversed.