German Savings Bank, Appellee, v. Francis Geneser and Maria Geneser, Appellants.

**Renewal of Notes:** CONSIDERATION. Defendant and his son were officers in a bank and owned a controlling interest in a second corporation, of which the son was treasurer. The latter corpor-

ation from time to time borrowed money from the bank, which afterwards suspended business. Later the bank examiner called attention to the fact that the corporation's notes held by the bank were not properly secured, and defendant and his son, with others, thereupon indorsed them. Afterwards these notes were taken up and cancelled, a new note and mortgage signed by defendant being given in their place. *Held*, that though defendant's indorsement of the original notes was without consideration, the new note and mortgage was based on a good consideration in the surrender and cancellation of the old notes.

*Mistake.* The fact that defendant did not know that his indorsement was without consideration and that he was not liable on the old notes did not invalidate the new note, where it did not appear that the bank officials knew that he was executing the new note because of a mistaken belief as to his liability, or that they themselves were mistaken with respect thereto; the mistake not being mutual.

*Same.* The bank's attorney, when the new note was executed, told defendant and others that they had all indorsed the old notes, and were jointly liable, etc. There was no evidence that he knew the circumstances under which the old notes were executed, or that defendant relied on his representations as to liability, or that the bank officials knew that defendant was mistaken with respect thereto. The attorney also stated that defendant could enforce contribution from another indorser who refused to sign the new note. *Held*, not to show that defendant's mistake was induced by inequitable conduct on the part of the bank or its attorney, and hence the new note was good.

*Appeal from Polk District Court.*—HON. S. F. PROUTY, Judge.

FRIDAY, FEBRUARY 14, 1902.

SUIT in equity for the foreclosure of a mortgage. Defendants admit the making of the note and mortgage in suit, but say they were wholly without consideration; that they were executed through mutual mistake and procured through fraud. On these issues the case was tried to the court, resulting in a judgment and decree for plaintiff, and defendants appeal.—*Affirmed.*

*Dowell & Parrish* for appellants.

*C. C. & C. L. Nourse* for appellee.

Deemer, J.—The note in suit was executed on May 2, 1898, by defendant Francis Geneser, J. W. Geneser (his son), and J. B. Schuster. It was payable to Charles Weitz, trustee, and matured, by its terms, five years after date. It was for the sum of $20,292.44, and bore 6 per cent. interest, payable semi-annually. The mortgage in controversy, which purports to secure the note, was signed by Francis and Maria Geneser, the defendants herein. For failure to pay interest installments when due, the mortgage provided that the whole amount of the note should become due and payable. Default was made in the interest payment due November 2, 1898, and it is claimed that the entire amount called for by the note, less a payment of $7,000 made by Schuster, is now due and owing plaintiff. During the years 1895 and 1896 defendant Francis Geneser was president, and his son Joseph was cashier, of an incorporated bank in Des Moines known as the German Savings Bank; and father and son, with Schuster and one Aulman, owned and controlled the stock of another corporation, known as the Capital City Oatmeal Company, of which Joseph Geneser was treasurer. At various times, as the oatmeal company needed money, Joseph Geneser took from the bank such sums as it needed, and gave notes for the amounts so taken, signed, "Capital City Oatmeal Co., J. W. Geneser, Treasurer." These notes were kept with the bills receivable of the bank, and as such entered upon its books. In January of the year 1897 the bank suspended business, and was placed in the hands of a receiver. Shortly thereafter the state bank examiner, in looking over the assets of the bank, discovered five of these "oatmeal notes," and called Geneser's attention to the fact that they were not properly secured, and should be made bankable. Thereupon the notes were in-

dorsed by the Genesers, Schuster, and Aulman, immediately listed as good, and so reported to the court appointing the receiver. In the following June the bank was re-organized, and Francis Geneser again elected president. The oatmeal notes were by order of court transferred to the re-organized bank. This was after they had been indorsed pursuant to the suggestion of the bank examiner. It is claimed by the plaintiff that the note and mortgage in suit were executed in satisfaction and in lieu of the indorsed oatmeal notes; that the time of payment was extended by this substitution, and the rate of interest reduced from 8 to 6 per cent. Defendants say that the indorsements of the oatmeal notes were without consideration; that Francis Geneser was not in fact liable thereon, but, acting on the supposition that he was, he signed the note and mortgage in suit through mistake; that the oatmeal notes were not surrendered, but were held by Joseph Geneser as cashier of the bank, and were in its hands uncanceled when this action was commenced, and that the bank, through its officers, knew when taking the note and mortgage in suit that defendant Francis Geneser, was not liable thereon, and also knew that he (Geneser), did not know of his non-liability; and that, taking advantage of its knowledge and of defendant's ignorance, it secured the execution of the note and mortgage in suit. The negotiations leading to the execution of these last-named papers were conducted on behalf of the bank by an attorney, and the transaction will be referred to with more particularity as we proceed with the case.

It is apparent from this statement that there was no consideration for the indorsement of the original oatmeal notes. The consideration for the notes had passed, and the indorsers had not individually received any benefit therefrom. The oatmeal company was an entity distinct in itself, and a benefit to it would not be such an inducement as would make the stockholders liable on a subsequent promise to pay, unless there was some other consideration.

There was no extension of time or change in the terms of the original notes; hence there was in fact no consideration for these indorsements. *First Nat. Bank v. Felt,* 100 Iowa, 680. As there was no consideration for the original indorsements, a mere extension of the time of payment of the oatmeal notes would not constitute a consideration for the notes in suit, unless some harm 'or detriment resulted to the promisee. But if the note and mortgage in suit were given and accepted as payment of the original oatmeal notes, and these notes were canceled and surrendered, and were no longer treated by the bank as obligations of the oatmeal company, then there was a consideration for the instruments in suit. In disposing of this question we start in with the presumption that the note and mortgage in suit were based upon sufficient consideration, and the burden is on the defendants to prove the contrary. Without setting forth the testimony, it is sufficient to say that we find the instruments in suit were given in payment and satisfaction of the oatmeal notes; that these last named notes, although found in the possession of the bank when this suit was commenced, were in fact canceled, and slips representing them marked "Paid," and were left with the bank simply for safekeeping, or kept by Joseph Geneser as treasure. of the oatmeal company. This being true, the defense of want of consideration entirely fails.

II. To sustain the issue of mutual mistake, defendants contend that all parties supposed the indorsers of the oatmeal notes were liable thereon; that, acting on this belief, defendant Francis Geneser executed the note in suit, which he would not have done had he known he was not liable as indorser on the original notes. There was no mistake as to any of the facts. These were known to all the parties. The oatmeal notes were indorsed at the request of the bank examiner, and the indorsers were at least morally bound to make this paper good. They were in no manner mislead, nor were any facts withheld

from them at the time the indorsements were made. In-
deed, they are not now contending that they indorsed
these notes through mistake.    Defendant Francis Gene-
ser's sole contention in this respect is that, through
mistake as to his legal liability on the contract of indorse-
ment he executed the note in suit; that this mistake was
common both to the ' payor and to the payee; and
that by reason thereof he is not liable. It does not appear,
however, that either the bank, or the attorney who repre-
sented it when the note in suit was executed, knew that the
defendant was executing the note through a mistaken belief
as to his liability on the oatmeal notes. Had suit been
brought against Francis Geneser on his indorsement of the
oatmeal notes, he could have waived his defense of want
of consideration, and allowed judgment to be entered against
him. He could have treated his moral obligation as a legal
one if he had seen fit. And so, when the bank went to
him to secure the execution of a new note to take up the
oatmeal notes, he (defendant) could, if he saw fit, treat
his moral obligation as a legal one, and could, at his elec-
tion, avoid suit on these old notes by giving a valid obli-
gation in payment thereof. Moreover, there is nothing in
the record to show that either the bank examiner who se-
cured the indorsements or the bank officials were mistaken
as to defendant Geneser's liability. For aught that appears,
they may have taken the new note with full knowledge of
the fact that Geneser was not bound on his prior contracts of
indorsement. Mistake, to be a ground of relief in equity,
must be mutual; that is to say, it must appear that both par-
ties were in error regarding some material fact, and that
this error was an inducement, or one of the inducements,
for the making of the contract. To apply the rule to this
case, it must appear that when the note in suit was executed
both the bank and the defendant Geneser were mistaken
as to Geneser's liability on his contracts of indorsement,
and that by reason of this mistake the note on which this

action was brought was executed. This does not appear; hence defendants' second defense must fail.

III. Closely allied to this second defense is the third, to-wit, fraud. The exact claim here is that Geneser was mistaken regarding the legal effect of his contracts of indorsement, and that, although the bank or its agents may not have been, yet, having so acted as to induce the mistake on defendant's part, they are not permitted to take advantage of it, and defendant is relieved on the ground of fraud. There is an equitable rule to the effect that where there is a mistake of law or of fact by one party, which is induced, aided, or accompanied by inequitable conduct of the other, containing elements of wrongful intent, such as misrepresentation or concealment, a court of equity will lend its aid, and relieve from the consequences of the error. *Williams v. Hamilton,* 104 Iowa, 423; *Marshall v. Westrope,* 98 Iowa, 324. Turning now to the record, we find nothing to indicate that either the bank or its representatives knew when Geneser signed the note in suit that he was acting through mistake as to his legal rights or obligations on the contracts of indorsement. The attorney for the bank, no doubt, supposed the indorsements were valid, but he had no knowledge respecting Geneser's beliefs on the subject. The bank was not guilty of inequitable conduct in seeking to have the indorsers take up notes that were long past due, and, as we have said, had no knowledge that Geneser was acting under a mistaken notion as to the law or as to his legal rights or liabilities. It concealed nothing from Geneser when taking his note, and made no affirmative misrepresentations on which Geneser relied. True, the attorney who represented the bank said to defendant Geneser, and to others present at the time when the note in suit was executed, "Gentlemen, you have all indorsed these notes [meaning the oatmeal notes], and are jointly liable on them, and the bank will not accept separate notes." There is no evidence, however, that he knew the circumstances under

which the original notes were indorsed, or that defendant Geneser relied on his statement as to liability because of his (the attorney's) superior knowledge of the law. Defendant knew the exact facts regarding the making of the contracts of indorsement, and no such relations of trust or confidence existed between him and the attorney as would change the ordinary rule regarding expressions of opinion with respect to legal rights. The attorney did not know that defendant was relying upon his legal opinion, and the declaration as to liability was a mere incident of the discussion, —a reason given for not accepting the individual notes of the indorsers. We are constrained to hold that defendant acted freely, and that, whatever his mistake, it was not induced by any inequitable conduct on the part of plaintiff or its attorney. If defendant relied on any statement of the attorney, it was to the effect that he (Geneser) could enforce contribution from Aulman, who refused to sign the new note. This is not sufficient, however, to sustain the defense.

The burden of showing fraud or mistake is upon the defendant, and the *quantum* of proof required is well understood. Fraud is never presumed, but must be shown by facts and circumstances inconsistent with honesty and fair dealing. That has not been done in this case, and, as none of the defenses pleaded have been established, the decree is AFFIRMED.