JAMES COSTELLO, Appellant, v. STOKELY GRAIN COMPANY et al., Appellees (and two other cases).

**REFORMATION OF INSTRUMENTS:** Grounds—Ignorance and Excusable Misconception. A contract which fails to express the true agreement between the parties will be reformed, without regard to the cause of the failure to express the contract as actually made. Especially is this true when the party injured by the omission was *uneducated,* was not the *dominant* personage in the transaction, and was *excusably misled* by the indefinite and uncertain language employed in the contract.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

MARCH 7, 1922.

THIS action presents an equitable issue arising on the counterclaim of the defendant Welder for the reformation of a clause in a lease of real estate between defendant as tenant, and the plaintiff Costello, as landlord. The relief prayed for was granted and the plaintiff appeals.—*Affirmed.*

*White & Clarke,* for appellant.

*Stanley Trevarthen,* for appellees.

DE GRAFF, J.—Three causes of action as shown by the caption of this appeal were consolidated for the purposes of trial.

The first two causes were instituted as law actions and were brought by the plaintiff Costello against the defendant Welder, the Stokely Grain Company, and the Schaal-Walker Company to recover the value of certain grain which had been sold by the defendant Welder to the grain companies. Welder was a tenant of the plaintiff on his farm for the year 1920-21 and the grain that was sold was raised on this farm and subject, as is alleged, to a landlord's lien for rent.

Subsequently to the commencement of the two actions by the landlord Costello, and while said actions were pending, the tenant Welder filed his petition in which it is recited that the defendant Costello claims some right, title or interest by reason of a landlord's lien in the sum of $1,633.92, which sum represents the value of certain grain sold by the plaintiff to the Stokely Grain Company. Plaintiff also avers that the defendant Costello "has been fully paid for any account between the plaintiff and the defendant Costello," and therefore prays judgment against the Stokely Grain Company in the sum mentioned.

For answer to the petitions of the plaintiff herein and by way of counterclaim defendant Welder presents an equitable issue, and prays for the reformation of the lease entered into between him and his landlord. It is alleged by the defendant tenant that:

"During the negotiations and at all times represented to the defendant that he [plaintiff] would drain or cause to be drained a certain 70 acres of said premises that were wet and unfit for cultivation, as an inducement for the defendants to enter into said lease; and that at the time the said lease was executed, by mistake of the parties to said lease, the said particular 70 acres were not described and the representations as to draining the same were omitted from said lease with the exception that there was inserted and indorsed on said lease the following: 'Second parties [tenant] agree to haul all tile and fill all the ditches without charge, for all tile work performed during this lease. Second parties agree to board all men hired by the first party for 35 cents per meal, and to furnish all lodging without charge.' "

It is further alleged that the landlord failed to drain the said 70 acres as he had promised so to do before corn planting

in 1920, whereby the tenant Welder was unable to cultivate said 70 acres. The prayer of the counterclaim is that the written lease be reformed to contain the covenant of the parties and to express the real agreement of the parties to said lease and that the said lease be reformed "to contain that the plaintiff or parties of the first part will drain said 70 acres in time for the corn planting season of 1920."

Upon the consolidation of the three cases for the purposes of trial the court indicated that the issue in equity as presented by the counterclaim of the defendant Welder would first be determined and with this understanding the cause proceeded to trial. The court found in favor of the defendant Welder and decreed the reformation of the lease leaving all other issues for the determination by a jury.

If a contract as written fails to express the true agreement between the parties, equity will grant relief without regard to the cause of the failure to express the contract as actually made, whether it is due to fraud, mistake in the use of the language, or any other thing which prevented the expression of the true intention of the parties. *Coleman v. Coleman,* 153 Iowa 543.

To authorize a reformation there must be shown "such a degree of proof as will produce in an unprejudiced mind the belief and the conviction of the truth of the fact asserted taking into consideration all the surrounding facts and circumstances." *Rensink v. Wiggers,* 99 Iowa 39.

In cases of this character the so-called parol evidence rule finds no application and it is competent to show the conversations and the surroundings of the parties to the contract prior to its execution. What was said prior to the execution of the contract was an inducement for its execution, and it is so alleged. The primary object is to have the contract express the real agreement and if the evidence is such that the unprejudiced mind "readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute then the evidence is of necessity clear and satisfactory." *Good Milking Machine Co. v. Galloway,* 168 Iowa 550.

A court will not write a contract for the parties in the first instance, and if all the facts in the execution of the contract were equally within the knowledge or the means of knowl-

edge of the parties thereto before the signing thereof, equity will not reform. Defendant Welder testified that he thought the language of the lease relative to tiling was broad enough to express the understanding had prior to their meeting in the bank. The statement of the landlord "I will put it in the lease" seems to have lulled Welder into a feeling of security and confidence. Furthermore the tenant was not the dominant personage in the transaction.

Does the evidence in this case disclose sufficient ground or reason to warrant a court to reform the instrument? The farm in question contained 243 acres of land. It was leased at $15 per acre. The landlord claims that he had never seen Welder prior to their meeting in the back room of the bank in Woodward where the lease was executed, and prior to that time he states he had no discussion with Welder and did not talk about the terms of the lease except such as were had when the lease was drafted. This does not sound reasonable. Welder and his wife testify that they arranged for a meeting with Costello and first met him on one of the streets of Woodward and then and there had conversations as to the rent and also about tiling the wet land. Welder claims that the tiling of the 70 acres was then and there discussed and it was mentioned that there was some unplaced tile on the land which tiling had been hauled by a former tenant. In effect the landlord told the tenant that he would not have much tile to haul, "but you will have to fill the ditches." If Welder's testimony is to be believed the whole matter was agreed to before they met the second time in the bank when the lease was executed, and Welder stated that at their first meeting and after a discussion of the matter Costello said: "I will put it in the lease." These conversations had reference to the 70 acres of wet land on this farm and it is shown by the evidence that by reason of the character of the land it was impossible for the tenant to use the 70 acres during that season. In March the landlord visited the farm and his attention was then called by Welder to the tiling that was agreed to be done as claimed by Welder and Welder states that Costello told him that he (Costello) would see a couple of men including one William Fall who were tilers to do this work and that it would not be necessary for Mrs. Welder

to board them.   Fall testified that Costello did see him con-
cerning this tiling and stated what he wanted him to do.   This
testimony is denied by Costello in its entirety.   He denies the
conversations and denies his visit to Fall.   Costello's explana-
tion of the clause found in the lease relative to the hauling of
the tile and filling of the ditches was written into the lease be-
cause it was contained in a lease between him and a former
tenant.

We are not impressed with this explanation.   The language
used in the lease is indefinite and uncertain.   There is no doubt
but what Welder understood that the 70 acres in question was
to be tiled that fall or before the planting season of 1920.
Welder had inspected the farm prior to his meeting Costello.
Both parties knew the condition of this particular acreage and
it may not be said that after the drafting of the lease by the
scrivener under the dictation of Costello that Welder was called
upon to give a critical examination of the terms of the lease in
the light of the understanding previously had.   Welder could
easily understand his obligation as written and as easily under-
stand the obligation of the landlord in the light of prior con-
versations and agreements.   Had the lease read "If any tiling
on the farm is done, then party of the second part agrees to
haul etc," Welder would have understood that all tiling was
at the option of the landlord.   Welder had good reason to be-
lieve that their understanding was embodied in the lease.   Wel-
der and his wife are not educated people.   The trial judge had
all the parties before him.   It is apparent that the defendant
Welder attempted to conceal nothing.   His answers are reason-
able and consistent with the situation.

We are satisfied that the true intent of the parties in the
execution of the lease was to tile this particular 70 acres so as
to make it tillable and productive.   The evidence establishes
the contention of the appellee tenant and we are not inclined
to disturb the finding of the trial court.   The cold printed record
does not speak as audibly nor as convincingly as the witnesses
who were before the trial court.   The purpose in reforming a
contract is to effectuate justice and to express the true intention
of the parties.   The circumstances prior to and attending the
execution of the lease possess as much probative value as the

oral testimony, and in the light of those circumstances the denials entered by the landlord are not sufficient to tilt the scales of justice in his favor. The finding of the trial court is correct and the judgment entered is—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.