WALNUT STREET BAPTIST CHURCH, appellant, v. DAVID E. OLIPHANT, appellee.

No. 51411.

(Reported in 135 N.W.2d 97)

Beecher, Buckmaster, Beecher & Lindeman, of Waterloo, for appellant.

Birdsall, Pickett & McLendon, of Waterloo, for appellee.

PETERSON, J.—The petition in this case consists of two counts. Count I is an action for damages for breach of contract. Count II is an action for reformation of the deed given by plaintiff to defendant on the basis of mistake. Trial court held the contract should be reformed and dismissed plaintiff's case. Plaintiff appeals.

I. Plaintiff was the owner of a tract of real estate of about four acres in Waterloo. The tract was north of the north line of Locke Avenue and east of the east line of Baltimore Street. Baltimore Street was the westerly border of the tract and Locke Avenue the southerly border.

Defendant is a contractor and real-estate developer of long standing in the city of Waterloo and it clearly appears he has had considerable experience in buying, selling, platting and dealing in real estate. He was in the habit of preparing his own contracts when he made offers for the purchase of real estate.

He had an option on a tract of land adjoining the tract belonging to plaintiff-church. He contacted the pastor of the

church to see if he could buy the tract. The pastor referred him to J. Dale Murphy. He was chairman of the Board of Trustees. Mr. Murphy suggested to defendant that he make a definite offer to purchase the tract. Mr. Murphy explained to him that the matter would then come first before the Board of Trustees, which board had charge of all church affairs with reference to real-estate and property matters. If his offer was agreeable to the trustees they would then refer the matter to the Advisory Board, which consists of the trustees and all other church officers. If the Advisory Board was favorable to the purchase offer it would come before the congregation, after notices of consideration of the property matter had been given at services for two Sundays prior to the congregational meeting.

Mr. Oliphant first made an offer of $36,000 for the property. This is Exhibit "4" in the record. His copy of this offer filled in by hand listed the price as $36,500. This is Exhibit "F". This proposal was not acceptable to the trustees. He then made another "PROPOSAL TO PURCHASE" of $38,000. The trustees decided to recommend this proposal to the Advisory Board. After consideration, the Advisory Board decided to recommend the proposal to the church congregation. Notice was given for two Sundays that a meeting would be held on April 19 by the church congregation to consider the matter.

Defendant delivered to Mr. Murphy one copy of the $36,000 proposal and two copies of the $38,000 proposal. Mr. Murphy delivered the $38,000 proposals to the trustees, the Advisory Board and the church congregation. This offer was accepted by the church. Only one copy of the $38,000 proposal was fully dated and signed. The clause which appears in Exhibit "A" about defendant assuming the pavement on Locke Avenue, here-inafter italicized, appears in both of the copies delivered to Mr. Murphy, but does not appear in the copy retained by defendant. That copy, Exhibit "D", is as follows. "The abstract shall show the property to be * * * clear of all liens and encumbrances, not expressly waived or assumed by us."

The executed contract known as Exhibit "A" is as follows:

"PROPOSAL TO PURCHASE

"To Walnut st. Baptist Church

"I, David E. Oliphant, of the city of Waterloo, County of Black Hawk, State of Ia., propose this %th day of April, 1961, to purchase the real estate described as follows: to-wit: Known as the Walnut St. Baptist Church Property; lying within the north line of Locke ave.—the east line of Baltimore st.—the south line of lot 13 Mitchell outlots and the center line of west 6th. street. Waterloo, Ia.

"I agree to pay therefor the sum of Thirty Eight Thousand 00/00 Dollars ($ 38,000.00) One Thousand 00/---- Dollars ($ 1,000.00) of which amount is attached as part payment to be held in trust by First Federal Saving & Loan, Thirty Seven Thousand 00/---- Dollars ($37,000.00) on or before the 23rd day of May, 1961, at which time I am to ~~receive said contract on standard form~~, or warranty deed with abstract showing merchantable title. (Mark out what does not apply.) Balance of the purchase price to be paid as follows:

"1. I agree to pay regular taxes, beginning with those for the year 1961, due and payable in the year 1962 and thereafter.

"2. Sewage disposal is to be paid in full up to date of transfer.

"3. You are to furnish me an abstract of title, made by a reliable abstractor, continued to date of contract (deed, if for a cash sale), showing good and merchantable title to said property and clear of all liens and encumbrances, not expressly waived or assumed by us. *It is understood that Special Assessments for public improvements on which Final. Plat and Schedule of Assessments have not been adopted by the municipality, as of this date, will be assumed by us.*

"4. The deed or contract shall be subject to recorded easements, building restrictions, and purpose of use and occupancy, and municipal zoning ordinances.

"5. I am to be given a reasonable time for the examination and approval of abstract.

"6. Possession of said property is to be given and taken on or before 23rd of May, 1961, and adjustments of interest, rents, insurance, or other matters shall be made as of ................, 19.........

"7. Deleted.

"8. Deleted.

"9. If the purchaser fails to fulfill his part of the agreement, he shall pay to the seller a sum equal to the amount of said commission as liquidated damages, and the seller hereby assigns to the agent the claim for commission as above stated. The advance payment made herein shall be forfeited and the same is hereby assigned to the agent to apply on his commission.

"10. In case either party fails to perform his part of the agreement, the other party may at his option forfeit this contract by thirty days' notice, or may proceed by action at law or equity to enforce the same as provided by law, and the party in default shall pay all costs including attorneys' fees, and a receiver may be appointed.

"11. If this offer is not accepted by the owner on or before April 20th, 1961, it shall become null and void and the first payment shall be returned to us without liability on the part of said agent to either party. If accepted, it shall become a binding contract for the sale and purchase of the above described property, and seller agrees to keep property adequately insured until final settlement. Buyer agrees to accept insurance adjustment as full replacement for improvements damaged or destroyed, in case of loss before final settlement.

"12. It is understood that no representations made by the agent in the negotiations of this sale are being relied upon unless incorporated herein or endorsed on the back hereof in writing, and that this property has been offered me by no other person:

"/s/ David E. Oliphant
Purchaser

"Date Accepted   April 19th 1961—Church Officers
"/s/ J. Dale Murphy
Chm.—Board of Trustees
"/s/ Horace C. Perman
Sec. Bd. of Trustees"

Exhibit "A" contains the specific provision, heretofore italicized, that defendant shall pay assessments for public improvements on which final plat and schedule of assessments have

884

not been adopted by the municipality "as of this date." The effective date was April 19, 1961.

Defendant was closely questioned, both on direct and cross-examination, about the matter of who was to pay for the paving. His only answer, repeated often, was that plaintiff had agreed to give a clear title, free from liens. Comprehensive examination of the written agreement between the parties clearly creates an exception as to the church paying the Locke Avenue paving.

There appears in the record a difference as to the date of attachment of the lien of the Locke Avenue paving to the property being sold by plaintiff to defendant. In a stipulation in the record it is referred to as June 8. In the findings of fact of the trial court it is referred to as June 9. The controlling evidence with reference to the matter however appears in the record in the form of a certificate by the city clerk showing that the resolution as to the completion of the pavement and the assessment for the cost of same against the property was passed and adopted on July 25, 1961. This was after all transactions pertinent to the case at bar; date of defendant's proposal April 5, 1961; date of acceptance by the church April 19, 1961; date of closing the transaction and execution and delivery of deed June 25, 1961.

The provision of the statute as to special assessments appears in the 1962 Code as section 445.11: "Upon the record of the levy of any special assessment within any county coming into the hands of the county auditor, the county auditor shall, in blue or black ink, prepare in a book to be known as a special assessment book, the list of the persons owning real estate to be affected thereby, in alphabetical or numerical order, which book shall contain a description of the real estate so affected, the date of the assessment, the total amount so assessed, and the installments to be paid, together with the amounts of the respective installments if said assessment is payable in installments."

A meeting was held in the office of Mr. Frank McLendon on June 23, 1961, by Mr. Robert A. Young, attorney for plaintiff, Mr. McLendon and defendant. Mr. Murphy had retained Mr. Young to prepare the deed and close the transaction for the church. During the intervening period the abstract had been brought to date and a certificate had been secured from the ab-

stract company describing the matter of any liens against the property by way of assessments for street improvements.

When Mr. Young met Mr. McLendon and defendant for the purpose of closing the transaction he asked defendant for a copy of the contract. Mr. Young did not have a copy in his possession. Mr. Oliphant gave Mr. Young Exhibit "D", which was different in wording as to assessments for street improvements from the other two copies, including Exhibit "A", the fully executed contract between the two parties. Mr. Oliphant also gave Mr. Young a skeleton "Report of Liens" issued by Black Hawk Abstract Company.

The abstract company must have secured the information from the city clerk because as of June 23 no resolution for assessment as to the paving against the property being sold had been adopted by the City Council of Waterloo.

Upon this report of liens appeared one report of paving tax for $3473.25. On the basis of the wrongful copy of the contract and mistaken report of liens, Mr. Young permitted defendant to retain out of the purchase price of $38,000 the sum of $3820.57, which represented the cost of the paving plus 10 percent for any discrepancy. Mr. Young, therefore, only secured a check to the church for the difference between the $38,000 and this paving assessment and some other small items that are not material in this case.

Mr. Young mailed the check to the church. He was immediately informed the check was not correct. He was informed that under the contract signed by all parties Mr. Oliphant was to pay for the paving and the church was to have $38,000 net, outside of some small matters to be taken out which were not in dispute.

Mr. Young immediately called Mr. McLendon and advised him that there had been a mistake; that Mr. Oliphant was to pay the paving tax when due. It had not yet been assessed.

By that time Mr. Young had inquired into the situation and found that one of the topics of discussion at the congregational meeting considering defendant's offer was the matter of the paving assessment which was going to come up later. Some members of the church said they better sell now for the $38,000 because

if they waited another year there would be another $4000 against the property for paving assessment.

II. In Count I of plaintiff's petition the church alleged the facts in detail and asked judgment against defendant for breach of contract. This was based on the theory that defendant had contracted to pay the church $38,000 and failed to pay $3820.57 of the purchase price.

Defendant made a feeble effort in his testimony to excuse the difference between the fully executed contract he had entered into with the church and the deed, by stating that he had not read the printed matter in his proposal to purchase. He prepared and signed the proposal. What defendant is now claiming is that he did not read and therefore did not know the contents of the document which was executed by both parties and which is Exhibit "A" in this case. This type of defense is not acceptable. His failure to read the printed matter did not excuse him from consummating the contract between him and the church. Martin v. Stewart Motor Sales, 247 Iowa 204, 73 N.W.2d 1; Griffiths v. Brooks, 227 Iowa 966, 289 N.W. 715; First National Bank v. Ten Napel, 198 Iowa 816, 200 N.W. 405.

Another well established principle of law is also involved in connection with Exhibit "A". A party to the contract who prepares the contract shall have the same construed strictly against him. Andrew v. Austin, 213 Iowa 963, 968, 232 N.W. 79; Winfield State Bank v. Snell, 208 Iowa 1086, 1093, 226 N.W. 774.

III. In Count II of plaintiff's petition the church outlines in more detail the transaction between the parties and prays for reformation of the deed. Equity has power to grant reformation. The burden of proof is upon the party requesting the reformation and the evidence must be clear and convincing. The rule controlling this case stated in German Savings Bank v. Geneser, 116 Iowa 119, 125, 89 N.W. 201, and approved in In re Estate of Jenkins, 201 Iowa 423, 427, 428, 205 N.W. 772, is that a mistake by one party which is induced, aided or accompanied by inequitable conduct of the other, containing elements of wrongful intent, such as misrepresentation or concealment, affords ground for reformation. The general rule is that the mistake must be mutual. Fullerton v. United States Casualty Co.,

184 Iowa 219, 223, 167 N.W. 700, 6 A. L. R. 367; McNair v. Sockriter, 199 Iowa 1176, 201 N.W. 102; 45 Am. Jur., Reformation of Instruments, section 55, says "a unilateral mistake is not ordinarily ground for reformation." Also, "when no question of fraud, bad faith, or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual."

Reformation of an instrument does not mean changing the terms of the agreement, but has reference to a change in the drafted instrument to conform to the real agreement. Baldwin v. Equitable Life Assur. Soc., 252 Iowa 639, 108 N.W.2d 66; King v. Good, 205 Iowa 1203, 219 N.W. 517.

If an instrument as written fails to express the true agreement between the parties, equity will grant relief, without regard to the cause of the failure to express the agreement as actually made, whether it is due to fraud, mistake in the use of language or anything else which prevented the instrument from expressing the true intention of the parties. Costello v. Stokely Grain Co., 193 Iowa 203, 186 N.W. 842.

At the time of the closing of the transaction between plaintiff and defendant in Mr. McLendon's office on June 23, 1961, when Mr. Young asked defendant for a copy of the contract, the defendant handed Mr. Young one of the two copies of contract which had not been entered into between plaintiff and defendant. The wording on the contract was different from the wording on Exhibit "A", which was the contract finally accepted and signed by both parties. It may be possible that defendant handed this copy of the contract to Mr. Young through inadvertence, but otherwise is also possible.

However, in accordance with the copy of contract which Mr. Oliphant handed Mr. Young, which was Exhibit "D", Mr. Young delivered to defendant a warranty deed conveying the four-acre tract from plaintiff to defendant. The deed is Exhibit "3" in the record. The deed does not express the fully executed original agreement entered into between plaintiff and defendant. According to the deed, payment for the paving was assumed by plaintiff. According to the clear and convincing terms of the original contract between the parties, known as Exhibit "A", the cost of the

paving was assumed by defendant. The agreement between the parties was that special assessments for improvements as to which final plat and schedule of assessments had not been adopted by the municipality were assumed by Mr. Oliphant.

The situation is clearly covered in the written agreement between the parties. The trial court reformed the agreement. This was error. The reformation should have been and is as to the deed.

The trial court in its decree stated the parties were all operating under the impression there was no lien for paving against the property. The court stated that through oral conversation between the parties the church was to pay for the paving. The record does not disclose any clear and definite oral conversation between the parties to this effect. The transaction is wholly based upon the written contract between the parties called Exhibit "A". The only oral situation that entered into the matter as shown by the record was the fact that at the congregational meeting to consider defendant's proposal to purchase, some of the church members stated that it would be better to sell now in accordance with defendant's proposal than to wait until next year, because by that time there would be $4000 in paving assessments against the property on Locke Avenue. Of course, defendant was not in any manner a party to this conversation because he was not present at the congregational meeting and there is no testimony in the record stating that this matter was ever specifically mentioned to him. The whole situation of negotiation and entering into the contract was based solely and clearly on the one copy of agreement signed by both parties to the transaction.

Under these conditions it is ordered the deed be reformed and that it provide, in accordance with the agreement, for the payment of the Locke Avenue paving by the grantee, David E. Oliphant.

The trial court is instructed to prepare decree and judgment in accordance with this decision, finding that defendant shall pay plaintiff the sum of $3820.57, together with statutory interest from June 23, 1961, until date of payment, and providing that

all costs, both in the district court and in this court, shall be taxed against defendant.—Reversed.

All JUSTICES concur except HAYS, J., not sitting.