Percy SKUBAL and Wanda Skubal, Appellees,

v.

Harley F. MEEKER and Samatha E. Meeker, Appellants.

Harley F. MEEKER, Appellant,

v.

Percy SKUBAL, Wanda Skubal, William Skubal, Sr., and Esther Christine Skubal, Appellees.

Nos. 62087, 62088.

Supreme Court of Iowa.

May 30, 1979.

Robert Day of Day, Meeker, Bates & Arbuckle, Washington, for appellants.

Richard S. Bordwell, Washington for appellees.

Considered by REES, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

REES, Justice.

Two separate appeals are involved in this matter having their genesis in separate actions brought in the District Court of Washington County which were consolidated for trial. While no formal order consolidating them on appeal has been entered, nonetheless they were submitted together and will be disposed of in this opinion.

The first appeal is from a judgment entered in a forcible entry and detainer action, and the second from judgment entered in an equitable action seeking reformation of a real estate contract and cancellation of the forfeiture of said contract. We reverse as to both appeals and remand for further proceedings.

The appellees Percy and Wanda Skubal were the owners of a farm premises which they sold on a deferred payment contract in 1975 to Arthur M. Andries and DeWayne M. Brockway for the sum of $160,000. A small tract of approximately two-thirds acre, on which was situated a dwelling house, garage, machine shed and well, was excepted from the sale to Andries and Brockway.

On April 15, 1976 Andries and Brockway sold the farm at public auction to appellant Harley F. Meeker for a total sale price of $148,750. Meeker made a down-payment at the time of sale of $14,875, and an additional payment of $22,312.50 on May 15, 1976, and made a further application on the principal of $7,000 in 1977. A written agreement memorializing the sale after the auction was entered into between Meeker and Andries and Brockway. On May 19, 1976 Andries and Brockway assigned their contract to Percy and Wanda Skubal, the origi-

nal contract sellers, and executed in favor of the Skubals a quit claim deed, thereby effectively removing themselves from the chain of title. Subsequently, on December 8, 1976, Percy and Wanda Skubal entered into an agreement with Meeker under which Skubals assumed and agreed to perform the April 15, 1976 agreement between Andries and Brockway as sellers and Meeker as buyer of the premises.

The appellee William Skubal, Sr., is a son of the elder Skubals, appellees Percy and Wanda, and Esther Christine Skubal is William's wife. William and Esther are the record titleholders to and at all times pertinent to this controversy occupied the dwelling house and other buildings situated on the two-thirds acre tract which was excepted from the sale to Andries and Brockway.

The auction sale at which Meeker purchased the farm was advertised extensively as having two water wells situated thereon, but in fact one of the wells was on the dwelling house portion of the farm which was not part of the property sold, the two-thirds acre tract owned by William Skubal. At the auction sale, the auctioneer stated the purchaser would be able to continue a verbal arrangement which existed between William Skubal and Andries and Brockway which permitted Andries and Brockway to use water from the well on the house property in exchange for the payment of the charge for electricity for pumping the water. It was expressly agreed that if the well on the dwelling house property were to cease to produce water, no one was obligated to drill a new well.

The agreement under which Meeker secured water from the well on the house property continued in effect from the date of the sale to Meeker until June of 1977 when William and Esther Skubal turned off the water following a dispute between the Meekers and the Skubal children. Meeker failed to make the principal and interest payments due on the contract on January 1, 1978, and notice of forfeiture was served on Meeker on January 13. Following the discovery of a technical defect in the forfeiture notice, a new notice was served on the Meekers on January 26. On February 23, the Meekers tendered to the Skubals the sum of $11,872.73 which they claimed represented the amount owed on the contract less damages the Meekers claimed to have sustained from being deprived of the water from the well on the house premises. After the expiration of the 30-day period for curing the default provided by § 656.2(3), The Code, 1977, on March 3, the Skubals refused the Meekers' tender of the sum of $16,-669.62, the full amount owed on the contract. The affidavit in support of the forfeiture of the contract was duly filed in the office of the Recorder of Washington County on February 27, 1978.

On March 6, 1978 Percy and Wanda Skubal instituted the first action, the forcible entry and detainer proceeding. On March 16 Meeker instituted his action by filing a petition seeking reformation of the contract and the cancellation of the forfeiture. The actions were consolidated for trial in accordance with a stipulation of the parties that the forcible entry and detainer action be decided first. The trial court entered judgment for the Skubals in both actions, and the Meekers then filed motions to amend or enlarge the findings of the trial court and for a new trial, both of which were overruled.

It is apparent from the record that the Skubals complied with the forfeiture provisions of chapter 656, The Code, and the record indicates the amount of the Meekers' principal investment in the property at the time of the forfeiture was approximately $44,000.

In the face of the Meekers' constitutional challenge to chapter 656, The Code, the trial court concluded said chapter is constitutional. It also concluded it had no jurisdiction to reform the contract which had been forfeited in accordance with chapter 656. The court further held the parol evidence rule barred reception of evidence of the oral agreement for the furnishing of water from the house well, and found the elder Skubals were not parties to the water agreement, irrespective of the fact that both Percy Skubal and William Skubal were present at

the auction and at least tacitly agreed to the arrangement for the furnishing of water.

The following issues are presented for review:

(1) Does the State's involvement in forfeitures of real estate contracts under chapter 656, The Code, constitute sufficient state action to invoke constitutional analysis under the due process clauses of the Fourteenth Amendment to the United States Constitution and Article One, Section 9 of the Iowa Constitution?

(2) Did the district court err in concluding that it lacked jurisdiction to reform a forfeited contract?

(3) Did the trial court err in applying the parol evidence rule and not admitting evidence explaining, or varying from, the terms of the written agreement?

(4) Is there clear and convincing evidence in the record that the contract does not reflect the true agreement of the parties and should be reformed?

(5) Does the remedy of forfeiture, as applied in this case, result in an inequitable dispossession of the vendees' property, thus unjustly enriching the vendors?

I. The Meekers contend the forfeiture statute contained in chapter 656 of The Code is constitutionally infirm under existing due process standards. A prerequisite to the application of any due process analysis is either an Iowa or federal finding of state action. We have previously addressed this issue in the context of the forfeiture provisions of the Iowa Code and have found the extent of state action involved to be less than that necessary to trigger due process requirements. *Jensen v. Schreck,* 275 N.W.2d 374, 386 (Iowa 1979). In *Jensen,* we noted that the statute did not amount to a substantial revision or infringement upon the contractual obligations of the parties, the state providing only a brief potential respite from the consequences flowing from private contractual obligations. As we are unable to distinguish *Jensen* from the case at bar as to the state action issue, we can only conclude that

a like result is mandated in this case. The lack of state action precludes further discussion of the Meekers' due process allegations. Accordingly, we address the remaining issues.

II. The trial court concluded it lacked jurisdiction to rule upon the Meekers' requests for cancellation of the forfeiture and reformation of the contract due to the fact that the contract had been forfeited. We find that a court sitting in equity does have jurisdiction to cancel a forfeiture and reform a contract, and therefore reverse the trial court.

The fact that a contract has been forfeited would not appear to be a bar to the cancellation of a forfeiture; indeed it would necessarily seem to be a prerequisite thereto. Further, when the challenge relates to the terms of the contract and could result in the conclusion that the vendor was in default of the agreement of the parties, equity dictates a cancellation of the forfeiture. This court has held that a vendor in default cannot forfeit a contract. *Warren v. Yocum,* 223 N.W.2d 258, 261 (Iowa 1974); *Wemer v. Long,* 185 N.W.2d 243, 247 (Iowa 1971). Closer to the facts of the case at bar, we have also ordered the cancellation of a forfeiture when the vendor has been shown to have been in default at the time of the forfeiture. *Holman v. Wahner,* 221 Iowa 1318, 1324, 268 N.W. 168, 171 (1936). If it had been shown the vendor was in default at the time of the forfeiture, then the forfeiture should have been cancelled and set aside.

Here the Meekers sought to introduce evidence that the written contract did not contain the full agreement between the parties, there being representations made by the auctioneer at the time of the sale which were not included in the sales contract due to its having been prepared prior to the auction. Meeker therefore sought reformation of the contract to embrace those provisions which could show the vendor to have been in default at the time of the forfeiture. We hold that the district court did have jurisdiction to reform the sales contract and cancel the forfeiture.

■ Cancellation of a forfeiture or reformation of an instrument which would otherwise be void is not without precedent in this court as evidenced by the *Holman* opinion cited previously and the case of *Carrigg v. Mechanics' Bank of Providence,* 136 Iowa 261, 266–267, 111 N.W. 329, 331 (1907), where the court allowed reformation of a mortgage which had been foreclosed. It follows from the *Carrigg* case, and authority cited therein, that if the contract is reformed any judgment which has been rendered for the Skubals on their forcible entry and detainer action must be voided and the forfeiture process reinitiated. Jurisdiction to reform a purportedly forfeited contract is established by the foregoing precedents of this court.

III. The Meekers next contend the trial court erred in holding the parol evidence rule excludes the reception of testimony concerning terms allegedly omitted from the written contract.

■ While generally parol evidence is not admissible to contradict, vary or enlarge the terms of a written contract, Iowa courts have long held that parol evidence is admissible in actions for the reformation of instruments so long as it is relevant and material. *Ring v. Ashworth,* 3 Iowa 452 (1856); *First National Bank in Sioux City v. Curran,* 206 N.W.2d 317 (1973). *See* Thompson, *Reformation of Written Instruments in Iowa,* 23 Drake Law Review 327, 331–332 (1974). In the matter before us, the proffered evidence related directly to representations made by the auctioneer which the Meekers contend are integral parts of the contract of sale. Such evidence is both relevant and material. As was stated in *Curran* at 321 of 206 N.W.2d: "[I]n suits . . . to reform instruments, . . . the chancellor looks behind the documents to the actual transactions, and the parol evidence rule does not forbid him from doing so."

We determine the findings and conclusions of the district court to be inadequate for they do not indicate a consideration of evidence which is relevant and material. We therefore hold that the proffered evidence was improperly excluded.

■ IV. Finding the record adequate for so doing, we now consider whether the contract should have been reformed. Our review in this case is de novo, Iowa R.Civ.P. 334. The invocation of equity jurisdiction permits the necessary flexibility to work out the equities between the parties. *Holi-Rest, Inc. v. Treloar,* 217 N.W.2d 517, 527 (Iowa 1974). We reform the contract and thus vacate the forfeiture and the resulting judgment on the forcible entry and detainer action.

■ The contract involved herein was drafted prior to the auction sale of the land and was not subsequently revised. It is clear the sale bill and consequent auction and bidding constitute an enforceable contract, *Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 907 (Iowa 1977), and that the seller and buyer are bound by the sale conditions stated by the auctioneer, *Wohlers v. Peterson,* 195 Iowa 853, 854–55, 192 N.W. 837, 837 (1923). The written contract does not incorporate the representations made by the auctioneer regarding use of the well and the obligations accompanying such use. Also, the parties do not dispute the content of the auctioneer's stated conditions. Although use of the well involved a third party to the sale, its material nature and inclusion at the time of the auction, with the acquiescence of the parties to the sale, make it an element of the contract of sale. Its omission from the contract is readily attributable to the mutual mistake of the parties due to its nonexistence at the time the instrument was drafted. We hold there exists clear and convincing evidence that the written contract between the parties does not reflect the true agreement of the parties, *see Kufer v. Carson,* 230 N.W.2d 500, 503 (Iowa 1975); *Walnut Street Baptist Church v. Oliphant,* 257 Iowa 879, 886, 135 N.W.2d 97, 101 (1965); Iowa R.App.P. 14(f)(11), and that therefore the sales contract is hereby reformed to include the auctioneer's representations regarding use of the well on the adjoining property.

It follows from the reformation of the contract that the chapter 656 forfeiture pe-

riod must run anew, *see Carrigg* as cited earlier, prior to the bringing of a forcible entry and detainer action. We thus reverse the ruling of the trial court on the Skubals' action for forcible entry and detainer.

Due to the voiding of the forfeiture proceeding by reformation of the contract, it is unnecessary to pass upon the issue of the vendors' alleged breach. That issue is no longer properly before the court.

V. Due to our resolution of the preceding issues, we need not address the unjust enrichment question presented by the Meekers. We express no opinion on the merits of the contentions of the parties pertaining to the financial implications of any forfeiture found at trial.

VI. In summation we hold: (1) the trial court had jurisdiction to cancel the forfeiture and reform the forfeited contract; (2) the parol evidence rule does not apply to actions to reform instruments when the proffered evidence is relevant and material, and (3) the written contract does not express the true agreement of the parties and is hereby reformed.

The judgments and decrees of the trial court in these cases are reversed.

REVERSED.