In re Estate of Fred E. Palmer, deceased.

Pearl Palmer, proponent-appellant, v. Burton Sprole, contestant-appellee.

No. 50970.

(Reported in 122 N.W.2d 920)

JULY 16, 1963.

Hugh Lundy, of Albia, and Life, Davis & Life, of Oskaloosa, for proponent-appellant.

Stewart & Shearer, of Washington, for contestant-appellee.

SNELL, J.—This is a will contest tried to the court without the aid of a jury. The trial court denied probate and proponent appeals.

Fred E. Palmer died January 4, 1961, at the age of 84 years. He had been married twice and was survived by his second wife. His only living lineal descendant was a grandson.

Two affidavits of death and petitions for probate of will were filed. The first petition, filed by decedent's former attorney, referred to a purported will dated September 22, 1960. This instrument gave the statutory distributive share to his surviving widow, made two comparatively small bequests and gave the remainder of the estate to his grandson. This was the fourth

such instrument with comparable provisions drawn by the same attorney and executed by decedent.

The second petition, filed by the surviving widow, proponent herein, referred to a purported will dated October 14, 1960. This instrument gave the grandson $3000 and the remainder of the estate to the surviving widow.

This instrument was not prepared by decedent's former and regular attorney. Objections to the probate of the October 14, 1960, instrument were filed by the grandson, contestant herein. The objections were on two grounds: (a) That the said instrument was not signed by the said Fred E. Palmer and witnessed in the manner and form required by law and the statutes of Iowa. (b) That the said instrument and the signature thereto of Fred E. Palmer, deceased, was procured by and through fraud and undue influence exercised on or over him at said time. That the fraud and undue influence was exercised by Pearl Palmer who is named in said will as the principal beneficiary thereunder.

The trial court held that a jury question was presented on both issues: that proponent had failed to prove proper execution and that contestant had established undue influence. Probate was denied.

Although not recognized as such we will for convenience refer to the instrument of October 14, 1960, as the will and to Fred E. Palmer, deceased, as the testator.

In October 1960 testator was advanced in years, afflicted with many ailments and in rapidly failing health.

There was evidence and the trial court found that for some time proponent had dominated and had taken over her husband's personal and business affairs. There was evidence that testator was greatly distressed by his wife's dominance and treatment. These matters are of greater materiality on the charge of undue influence than improper execution. They do, however, form a background picture as to what did or did not occur at the time of the claimed execution of the will.

On the afternoon of October 14, 1960, proponent had possession of the unsigned will. Proponent called at the home of a friend, Mrs. Marjorie Phillips, showed her the proposed will,

asked her to come to the Palmer home that evening if she cared to be a witness to the will. Mrs. Phillips agreed and in response to an evening telephone call from Mrs. Palmer went to the Palmer home. When she arrived Mrs. Palmer and Mrs. Evelyn Lohrer were there. Mrs. Lohrer was there in response to a telephone call from Mrs. Palmer saying "she wanted her to come over and do her a favor."

The ladies were seated in the living room and visited for some time. There was no discussion about witnessing a will.

The living room is the southwest room in the house. Adjoining on the north is the dining room. A door in the southeast corner of the dining room leads to a dressing room, and further southeast to decedent's bedroom. The living and dining rooms are separated by an open doorway. The doorway is a square opening about double door width but not as wide as the rooms. The testimony and the exhibits, particularly the photographs introduced by proponent, describe and show the floor plan and location of furniture. From some points in the living room, if facing in the right direction, it is easy to see the table in the dining room.

From other points the view would be obstructed by the room partitions. The view would, of course, depend on looking in the right direction. There is a direct conflict in the testimony as to where Mrs. Lohrer was sitting and the location of some of the furniture. In connection therewith the trial court found:

"Irrespective of this conflict, it is obvious that Mrs. Lohrer could not have seen the east end of the dining room table without standing up or twisting clear around in her chair to see the east end of the dining room table; she says she did not do so."

There are conflicts and discrepancies in the testimony of Mrs. Phillips. On cross-examination she admitted that she would withhold truthful information from counsel until she had talked to the lawyer on the other side. She also testified that she would do nothing to harm proponent. Mrs. Phillips testified that she saw decedent come out of his dressing room and go to the east end of the dining room table. "There was a paper laying on the table. He stood at the table on the east end. He was dressed in his pajamas, he didn't have a dressing gown on but he did have

his glasses and bedroom slippers on." He leaned over and wrote on a piece of paper. Mrs. Phillips says decedent signed his will. Mrs. Phillips testified that after decedent placed his signature on the will he handed it to Mrs. Palmer, proponent herein, and said " 'give this to the girls' " meaning Mrs. Lohrer and Mrs. Phillips. She testified that Mrs. Palmer took the will to her in the living room where she signed as a witness. She (Mrs. Phillips) then took it over to where Mrs. Lohrer was sitting and Mrs. Lohrer signed as a witness.

In substance Mrs. Phillips testified decedent signed his will in the presence of the two witnesses and each witness signed in the presence of the testator and in the presence of each other.

The signatures of testator, Mrs. Phillips and Mrs. Lohrer appear on the will.

Mrs. Lohrer testified that she went to the Palmer home in response to a telephone call from Mrs. Palmer asking for a favor. She testified that in the Palmer living room she sat in a chair against the north wall to the east of the doorway and facing directly south. From this position she would not be able to see the dining room. She admits that she saw Mrs. Palmer bring the will to Mrs. Phillips and saw Mrs. Phillips sign. She admits that Mrs. Phillips then brought the will to her and that she signed it.

She then testified:

"Q. Did you see Fred Palmer sign Exhibit P-3 while you were at the Palmer home that evening? A. I did not.

"Q. Did you see Fred E. Palmer at any time while you were at the Palmer home that evening? A. I did not.

"Q. Did you hear the voice of Fred E. Palmer at any time while you were in the Palmer home that evening? A. I did not.

"Q. On the evening that you signed Exhibit P-3, at the Palmer home, did Fred E. Palmer request you to sign as a witness? A. He did not.

"Q. On that evening did Pearl Palmer in your presence and in the presence of Fred E. Palmer request you to sign Exhibit P-3 as a witness? A. No.

"Q. Was Fred E. Palmer in your presence when you signed Exhibit P-3, as a witness? A. No.

"Q. Did Fred E. Palmer at any time acknowledge to you that the signature Fred E. Palmer appearing on Exhibit P-3, was his signature? A. No."

Following decedent's death there were a number of conversations between the parties, and investigations by attorneys. Some were rather acrimonious and productive of tension. Mrs. Lohrer said she was torn between friendship for proponent and her own conscience. Apparently her conscience prevailed. Her testimony on important matters was forthright and unequivocal but of no help to proponent.

■ I. Mrs. Palmer, surviving widow, proponent and principal beneficiary under the will, was called as witness in her own behalf. She testified as to where Mrs. Phillips and Mrs. Lohrer sat and the location of the furniture. She testified that when she saw the will on the evening of October 14, 1960, Mrs. Phillips and Mrs. Lohrer were in the home. She testified that the will came into her possession after decedent's death and as to its condition. When asked whether or not she recognized the signature of decedent on the will an objection to her competency under section 622.4, Code of Iowa, the dead man statute, was sustained. The objection should have been overruled. Under the provisions of the dead man statute Mrs. Palmer was incompetent to testify as to personal transactions or communications with decedent. She was not competent to testify as to statements attributed to decedent because his statements, whatever they might have been, were part of a transaction participated in by her. She was, however, competent to testify as to her observations. O'Dell v. O'Dell, 238 Iowa 434, 448, 26 N.W.2d 401; Ipsen v. Ruess, 239 Iowa 1376, 1385, 35 N.W.2d 82.

■ She was not competent to testify that she saw decedent sign the will but she was competent to testify that she knew the handwriting of decedent and that the signature on the will was his. Such testimony is evidence of a fact independent of a personal transaction. Watters v. McGreavy, 111 Iowa 538, 82 N.W. 949; In re Estate of La Grange, 191 Iowa 129, 133, 181 N.W. 807.

■ The error was without prejudice. There is no controversy as to the genuineness of the signatures on the will. Proof

of the signature of Fred E. Palmer does not entitle the will to probate. In re Estate of Hagemeier, infra.

The witnesses were present and testified. The case is not within the exceptions outlined in section 633.22 where witnesses are unavailable. The issue is not whether Fred E. Palmer signed the will. The issue is whether he signed in the manner and under the conditions necessary for admission to probate.

■ II. Proponent offered to prove by her own testimony that the will was signed by the testator and witnesses in the presence of each other. Mrs. Palmer had possession of the will both before and after the signing. She stood by decedent at the dining room table. According to her witness, Mrs. Phillips, decedent told her to "take it to the girls." She carried the will to Mrs. Phillips for signature and received it back from Mrs. Lohrer. Mrs. Palmer was clearly a participant in a personal transaction and communication with decedent and was incompetent under the dead man statute. The objection to her testimony in regard thereto was properly sustained.

III. The controlling statute is section 633.7, Code of Iowa. The statute says: "All other wills, to be valid, must be in writing, signed by the testator, or by some person in his presence and by his express direction writing his name thereto, and witnessed by two competent persons."

■ The proponent in a will contest has the burden of proving signing and witnessing as required by the law. In re Estate of Klein, 241 Iowa 1103, 1109, 42 N.W.2d 593, and authorities cited therein.

Comparatively recent pronouncements have reviewed the authorities and succinctly state the proof required for probate.

In re Estate of Hagemeier, 244 Iowa 703, 58 N.W.2d 1, was a will contest tried to the court with a jury waived. The objectors maintained that the will had not been properly witnessed. There was unquestioned evidence that the signatures of the testator and witnesses were genuine. One of the witnesses testified that the testator neither signed nor acknowledged his signature in the presence of the witness. There was a question of fact as to what happened as we have in the case now before us. There the trial court held that the will was "not witnessed by two com-

petent persons as required by statute", and was not entitled to be admitted to probate. We affirmed. On pages 706, 707 of Iowa Reports we said:

"A will that is eligible for admission to probate must be shown to have been executed in conformity with the provisions of the statute." (Citations)

"A testator must sign his will in the presence of the subscribing witnesses or he must acknowledge that the signature exhibited is his own." (Citations)

"A will must be signed by two competent witnesses at the request of the testator. [Citations] A request may be implied from the acts of the testator or from the surrounding circumstances." (Citations)

"It is not necessary that testator declare to the subscribing witnesses that the instrument to which they have attached their names as witnesses is his will." (Citations)

"Inasmuch as this cause was tried to the court, a jury having been waived, its findings and conclusions have the force and effect of a jury verdict." (Citations) See also rule 344(f)1, Rules of Civil Procedure. "The type of action here considered is one at law and is not triable de novo on appeal." (Citations)

In the cited case as in the case at bar there was an attestation clause. In the cited case the proponent urged that inasmuch as there was an attestation clause which recited the observance of the statutory requirements there was a presumption of due execution. We said that a presumption is rebutted when facts to the contrary are established and that although there was some contradictory evidence concerning the execution the evidence presented was such as to justifiably overcome any presumption and permit the trial court, sitting as a jury, to determine the fact question presented unrestricted by a presumption.

In re Estate of MacVicar, 251 Iowa 1139, 104 N.W.2d 594, was an action to set aside the probate of a will. Lack of due execution was alleged. The will bore the signature of the testator, an attestation clause and the signature of three witnesses. One of the witnesses was dead at the time of trial. The other two witnesses testified that they did not see testator sign and that the instrument was so folded that they could not see his

signature. The testator did not acknowledge his signature to the witnesses. Probate was denied. We said:

"To witness means, to see the execution of as an instrument, and subscribe it for the purpose of establishing its authenticity. [Citation] The statute contemplates the will must be signed by the testator in the presence of the subscribing witnesses or he must adopt or acknowledge his signature to them * * *." Page 1143 of Iowa Reports.

In the MacVicar case proponents contended for the general rule that if proof is made of the genuineness of the signatures a presumption is raised of due execution. Citing the Hagemeier case, supra, we said "The presumption does not prevail against positive testimony of facts and circumstances surrounding the signing of the instrument to the contrary." Page 1143 of Iowa Reports.

The case at bar is controlled by well established rules and authorities. There was a question of fact as to due execution. The trial court found for contestant. There was ample support in the record for the finding. We find no reversible error. The purported will of October 14, 1960, must be denied admission to probate for lack of proper proof of execution.

IV. Contestant urged and the trial court also found for contestant on the issue of undue influence. There is support in the record for the finding. Because of our holding on the question of execution the alleged errors incident to the question of undue influence need not be discussed.

The case is—Affirmed.

All JUSTICES concur.