**Claim of Mrs. Louise PATTERSON, Claimant-Appellee,**

v.

**The ESTATE of Jewell M. PATTERSON, Deceased, Appellant.**

**No. 54489.**

Supreme Court of Iowa.

Sept. 9, 1971.

W. B. MacDonald, Shumway, Fristedt & MacDonald, Algona, for estate.

John E. Miller, Baker, Miller & Baker, Humboldt, for objectors-appellants.

L. E. Linnan, Linnan & Lynch, Algona, for claimant-appellee.

STUART Justice.

Jewell M. Patterson died testate on October 3, 1968. He was survived by his wife Lucile, five daughters and one son, Verl. Louise Patterson, Verl's wife, filed a claim against her father-in-law's estate in the amount of $36,792 for nursing services rendered him during the last three years of his life. This claim was resisted by decedent's daughters, Xena Anderson and Zelba Maxwell. The executrix of the estate, Ilda Elliott, another of decedent's daughters, filed, but later withdrew, an answer denying the claim. The cause was tried before the probate court which awarded claimant $7,500. The objectors have appealed.

Claims against estates are probate matters tried by ordinary proceedings. Section 633.33, Code 1971. We are bound

by the trial court's findings if they are supported by substantial evidence. Rules of Civil Procedure 344(f) (1).

Decedent was 90 years of age at the time of his death. His wife was 86. He had been in poor health for over five years and was practically bedridden for the last two years of his life. Claimant and her husband lived on decedent's farm only a short distance away from his home. Because of this proximity and the fact that claimant was a trained nurse, she was often called upon to assist in caring for her father-in-law until six months before his death when he was taken to a nursing home.

Mrs. Lucile Patterson testified that she too had been in failing health and needed considerable help in caring for her husband, even though there was a housekeeper living in their home during this period who did the cooking and cleaning.

She related: "My husband, Jewell Patterson, was a diabetic and bedridden some time before he died. * * * After he had his operation down at Fort Dodge he never got his strength back and it wasn't long until he had spells and spasms. I had to have Louise help me out. * * *

"[W]hen I needed help to turn him over or bedpan or something I needed help with, I called her. I did not call Louise for that purpose unless he had one of those spasms. Over the last year or two years Louise was over about every day, sometimes twice a day, just according to how bad he got, and she was doing things that a trained nurse would do."

Her testimony is epitomized by the following statement, "We couldn't do without Louise".

Another of decedent's daughters, Wana Dady, who has herself been in the nursing profession for eleven years and is currently employed with a Special Nursing Service for the State of Iowa, testified there were some periods when his condition required the services of a registered nurse for sixteen hours a day.

"I observed that Louise Patterson did some nursing services for my father. I saw her give him some hypos, saw her irrigate the urinal; I've seen her take care when he was incontinent. I've seen the time when he was out of bed and on the floor, and assist him back to bed. Help clean up the mess, do everything that a good RN would do."

This witness also gave her opinion as to what is the reasonable and fair value of the services of a registered nurse in the home care of an elderly person. She stated that $42 for an eight-hour period is the established wage rate throughout the state.

Ilda Elliott had also had an opportunity to observe her father's deteriorating condition and the services Louise Patterson had performed. She felt that her father and mother "couldn't have done without her".

She testified: "I am executor of my father's estate, and I did tell Louise Patterson to file something. I felt she should have something for all the services over the years, which services were quite extensive, and it is absolutely true that father and mother couldn't have gotten along without her."

Verl Patterson testified that: "My father was bedridden for approximately the last two years of his life. He had to be rolled over in bed with help. Most of the time two people. He was unable to take care of himself probably 90% of the time, that is going to the toilet."

He further testified that he had often observed his wife bathing his father as he would be present to help turn him over. This would occur from twice a week to once a day.

He related one particular incident he had observed in 1967 or 1968. He and his wife were planning to attend her parents' 60th wedding anniversary, and had taken a meal over to his parents since they were not feeling well. Louise Patterson had just started to leave when she was called back because her father-in-law had gone into a convulsion.

"His lips were blue and his heart had stopped beating. She applied artificial respiration for about fifteen minutes and he started breathing again. Well, we didn't go anywhere that day as we had to stay there. Dad had another spell later on and she was there when that happened."

I. The objectors claim Verl Patterson was incompetent to testify on behalf of his wife, the claimant, under the dead man statute which provides:

"No party to any action or proceeding, * * * and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, * * * against the executor, administrator, heir at law * * * of such deceased person * * *." Section 622.4, Code 1971.

The objection was based on Verl's testimony on voir dire that anytime he was over to his father's house, he "was there to help" as it appeared "he participated in whatever took place".

The dead man statute " * * * is not to be enlarged by construction and those whom the statute designates incompetent will be held so only as to the particular kind of testimony clearly forbidden by the statute". Carlson v. Bankers Trust Company (1951), 242 Iowa 1207, 1213, 50 N.W.2d 1, 5; In re Estate of Winslow (1967), 259 Iowa 1316, 1320–1321, 147 N.W.2d 814, 817.

It does not render one incompetent to testify as to observations and facts independent of a personal transaction with the deceased. In re Palmer's Estate (1963), 255 Iowa 428, 433, 122 N.W.2d 920, 923, and citations.

Here, Verl did not attempt to testify as to any communication indicating an agreement for compensation to his wife. He merely stated what he saw his wife doing for his father. The fact that he helped turn his father over does not bar him from testifying as to these observations.

II. Objectors claim the court erred in finding there was an expectation that claimant would be paid for her services to deceased.

"It is elementary that ordinarily where one person performs services for another which are known to and accepted by him, the law implies a promise to pay therefor. In re Estate of Walton, 213 Iowa 104, 106, 238 N.W. 577, and citations. Where, however, it is shown that the claimant and the person served are members of the same family and the services are such as are usually performed by one member of a family for another, a presumption ordinarily arises that the services are gratuitous. In such case, before the claimant can recover, in the absence of an express promise to pay, it must be shown that the services were rendered under the mutual expectation that payment would be made therefor. (Citations). The presumption of gratuity only arises when the family relation is shown. (Citations)." In re Talty's Estate (1942) 232 Iowa 280, 283, 5 N.W.2d 584, 586; In re Holta's Estate (1955), 246 Iowa 527, 531, 68 N.W.2d 314, 317.

Where there is no blood relationship, the presumption of gratuity is less strong. In re Talty's Estate, supra, 232 Iowa at 287, 5 N.W.2d at 588.

"The presumption of gratuity due to the family relation arises because of the reciprocal character of family duties and services. (Citations) * * * [W]here the services are so disproportionate as not to be reciprocal, the presumption of gratuity does not apply and the one who has performed the greater service will be entitled to recover." In re Talty's Estate, supra; In re Claim of Blackman (1964), 256 Iowa 1076, 1087–1088, 129 N.W.2d 618, 625; Ferris v. Barrett (1959), 250 Iowa 646, 652–653, 95 N.W.2d 527, 531; In re Estate of Klepper (1953), 244 Iowa 521, 525, 57 N.W.2d 565, 568.

The rule that the law implies a promise to pay for services rendered by one person for another, which are known to and accepted by the latter, is clearly applicable here unless the presumption of gratuitous services due to the family relationship arises. We do not believe it applies under this evidence. There was no blood relationship between the deceased and the claimant. The services performed were extensive and necessary. The decedent was physically incapable of rendering any reciprocal services. There was evidence from which the trial court could find a mutual expectation to pay a reasonable amount for the services rendered.

III. Objectors also claim there was not sufficient evidence upon which the trial court could determine the amount of the award.

"Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated. (Citations)" Orkin Exterminating Co., Inc. v. Burnett (Iowa, 1968), 160 N.W.2d 427, 430; Nicholson v. City of Des Moines (1954), 246 Iowa 318, 327, 67 N.W.2d 533, 538; 22 Am.Jur.2d 44, Damages, § 25.

The evidence here provided a reasonable basis from which the trier of fact could determine the reasonable value of the services rendered decedent by claimant.

IV. Objectors argue that the claim for wages more than two years prior to the death of decedent is barred by section 614.1 of the statute of limitations, which provides:

"Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

"* * *

"8. *Wages*. Those founded on claims for wages or for a liability or penalty for failure to pay wages, within two years."

We agree with appellants that this section is applicable to the claim made here in that it is clearly a claim for wages. However, the present litigation was commenced within two years of the termination of the services so the statute does not act to bar any part of the claim even though the claim was for services performed over a three year period. The services were part of a "continuous account". There was no break in the rendition of these services which would cause the statutory time to begin to run. Soderland v. Graeber (1921), 190 Iowa 765, 776, 180 N.W. 745, 749–750, and cases cited therein.

As we find no error, the trial court is affirmed.

Affirmed.

All Justices concur, except REYNOLDSON, J., who takes no part.