**Paul POULSEN and Carmen Poulsen, Appellees,**

v.

**Gordon RUSSELL and Angeline Russell, Appellants.**

**No. 64031.**

Supreme Court of Iowa.

Jan. 14, 1981.

Rehearing Denied Feb. 17, 1981.

James R. Snyder and Lawrence E. Blades of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

John T. Nolan and Marc B. Moen of Lucas, Nolan & Bohanan, Iowa City, for appellees.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

McGIVERIN, Justice.

Defendant Gordon Russell appeals from judgment on jury verdicts in favor of plaintiffs Paul and Carmen Poulsen on their claims for damages arising out of the dissolution of the parties' business relationship. Gordon and Angeline Russell appeal from trial court's decree reforming a contract for the sale of land from them to Poulsens. We affirm in part and reverse in part.

In 1974 Paul Poulsen was employed by Midwest Wrecker and Crane Service (Midwest) in Iowa City. Early in 1974 Poulsen decided to leave his employment with the investors in Midwest. As part of the separation, he wanted to acquire from Midwest a gas station and a car-crushing business. The investors agreed to sell these businesses if Poulsen would arrange to relieve Midwest and its investors of a $26,000 bank obligation. Poulsen had $6000 but could not get a bank to loan him the other $20,000.

To obtain the $20,000, Poulsen turned to Gordon Russell. Russell signed a $20,000 bank note as a comaker with Poulsen, and Poulsen received the money. Poulsen acquired the gas station and car-crushing business from Midwest and became the sole owner of them.

Later in 1974 Poulsen needed more money to purchase two trucks for a towing business. Russell agreed to be the comaker on another note for $13,800. In May 1974 Russell and Poulsen signed an agreement making them co-owners of all the businesses. In June the businesses were incorporated. Russell owned fifty percent of the stock and Paul and Carmen owned the other fifty percent. They agreed that Paul would manage the businesses and Gordon would be an advisor. Profits were to be split fifty-fifty. At the end of the relationship, Paul Poulsen and Gordon Russell were the only stockholders.

In the summer of 1974 the car-crushing business needed to relocate. On October 31, 1974, Poulsens signed a real estate contract to purchase for $94,000 "an undivided one-half (½) interest" in forty acres of land owned by Russells. This land was then leased to the corporation for use in the car-crushing operation.

The relationship between the parties deteriorated over the next two years. The gas station was closed and the towing business was sold. Finally, on January 11, 1977, Poulsen sold Russell his interest in the corporation for $5500. This suit followed.

In their petition Poulsens claimed actual damages for breach of fiduciary duty by Russell and intentional infliction of severe emotional distress on Paul Poulsen by Russell. They also claimed punitive damages. In addition, the petition stated a claim in equity to reform the land sale contract because it did not reflect the actual agreement of the parties.

The claims at law were separately tried to a jury. Iowa R.Civ.P. 186. The jury awarded Paul and Carmen Poulsen $83,545 for Russell's breach of fiduciary duty; $24,000 to Paul Poulsen for intentional infliction of emotional distress; and $200,000 punitive damages to Paul and Carmen. Judgment was entered on these verdicts.

The action to reform the contract and remaining issues, including a counterclaim by defendants, then were tried to the court.

The court entered its equity decree reforming the contract and ruled on the remaining issues. The court found that the agreement of the parties was for the sale of the entire forty-acre tract to the Poulsens and reformed the written documents to indicate this agreement. Poulsens were also awarded back rent for the land of $22,950 plus interest. Russell was awarded $9500 on the counterclaim for an improvement made on the land.

Trial of the jury and equity issues took almost four weeks. Gordon Russell appeals from the judgment on the jury verdicts and Gordon and Angeline Russell appeal the decree reforming the contract.

The following questions are presented for our consideration:

1. Does this court lack jurisdiction to review the issues arising out of the jury trial because notice of appeal was not timely filed?

2. Should the entire appeal be dismissed on the grounds that defendants "flouted" the trial court's decree reforming the real estate contract or accepted the decree?

3. Did the trial court improperly shift to defendant the burden of proving that he did not breach the fiduciary duty that he owed to plaintiffs?

4. Did the trial court err in submitting to the jury the issue of whether defendant breached his fiduciary duty to plaintiffs?

5. Was the evidence sufficient to allow the jury to decide the existence and amount of actual and punitive damages for breach of fiduciary duty?

6. Did the trial court properly admit evidence of defendant's reputation?

7. Did the trial court properly submit to the jury plaintiff Paul Poulsen's claim for intentional infliction of emotional distress?

8. Should this court award the prevailing commercial rate of interest on plaintiffs' money judgment during the pendency of this appeal in order to protect plaintiffs from suffering economic harm?

9. Did the trial court properly reform the contract to sell land to indicate a sale of forty acres rather than the sale of an undivided one-half interest in forty acres?

10. Should cost of printing the second supplemental appendix be taxed to plaintiffs without regard to the outcome of the appeal?

We first discuss two issues involving our jurisdiction to consider this appeal.

I. *Jurisdiction to review the jury trial issues.* Poulsens moved to dismiss Gordon Russell's appeal from the judgment entered on the jury verdicts because the notice of appeal was not timely filed. That motion was submitted with the appeal. While a timely notice of appeal is jurisdictional, *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 554 (Iowa 1980); *Hogan v. Chesterman*, 279 N.W.2d 12, 14 (Iowa 1979), we conclude the motion should be overruled.

In the petition Poulsens alleged several claims at law and in addition stated a claim in equity for reformation of the contract to sell land. The law claims were tried to a jury starting in January 1979. The equitable claim was tried to the court in March 1979. The jury returned verdicts on the law claims on February 16, and the court entered judgment on the verdicts on February 20. The court's decree reforming the land contract and ruling on remaining issues were entered on July 31. Russell filed a notice of appeal from both the judgment and decree on August 17, 1979.

Poulsens contend that the judgment on the jury verdicts was a final judgment, and because the notice of appeal was filed more than thirty days after that judgment was entered, the appeal from the judgment on the jury verdicts is untimely. Iowa R.App.P. 5(a). The parties agreed, and so do we, that the appeal from the court's decree reforming the land contract was timely.

█ We hold that the notice of appeal from the judgment on the jury verdict was timely because the judgment entered on February 20 was not a final judgment appealable under Iowa R.App.P. 1. The only final judgment entered in this case for appeal purposes was entered on July 31, 1979.

The notice of appeal filed on August 17, 1979, was within thirty days and therefore timely.

In general, a judgment is not final unless the rights of the parties have been fully determined. *Decatur-Moline Corp. v. Blink*, 283 N.W.2d 347, 349 (Iowa 1979). *Blink* involved separate actions by a corporation against two employees for injunctive and damage relief for violation of covenants not to compete. The actions were consolidated but the trial was bifurcated into liability and damage stages. The trial court decided the issue of injunctive relief but left to a later determination the issues of amount of damages in one case and any offset against a counterclaim in the other case. We concluded that because these issues remained to be tried, the grant of injunctive relief did not fully determine the rights of the parties and therefore did not constitute a final judgment.

We conclude that *Blink* controls here. The judgment on the jury verdicts, like the grant of injunctive relief in *Blink*, did not fully determine the rights of the parties subject to the litigation. The respective rights of Poulsen and Russell, and their wives, in the land and other issues were yet to be determined before a final judgment was issued.

There is a strong policy of avoiding piecemeal appeals. *Shoemaker v. City of Muscatine*, 275 N.W.2d 206, 209 (Iowa 1979). Since Poulsens and Russells were involved in all the events in this case, this policy will be served if we conclude that the rights of these parties were not fully determined until all the claims in Poulsens' petition and Russells' counterclaim were determined. *Cf. Mid-Continent Refrigerator Co. v. Harris*, 248 N.W.2d 145 (Iowa 1976) (summary judgment on plaintiff's claim not final judgment where counterclaim arising out of same transaction or occurrence remained).

Plaintiffs' motion to dismiss the appeal from the judgment on the jury verdicts is overruled.

II. *Motion to dismiss the entire appeal.* Poulsens also moved to dismiss the entire appeal on the ground that defendants have "flouted" the trial court judgment and therefore lost their right to appeal. Among other things, Poulsens claim that since the final judgment and decree, Russells have served them with notice of forfeiture of the land contract for failure to make several monthly payments and executed on defendants' counterclaim judgment for $9500. On the other hand, Russells say they were only exercising their legal rights, which were not contingent on the outcome of this appeal or limited by the trial court or a stay order. *Lutz v. Darbyshire*, 297 N.W.2d 349, 352 (Iowa 1980).

Plaintiffs cite no Iowa authority for the proposition that when one flouts the judgment of a trial court he loses his right to appeal. *But see* 4 Am.Jur.2d, *Appeal and Error*, § 239 at 734 (1962) (while the decisions are in conflict, flouting the order of the trial court may be ground for dismissal of an appeal therefrom). In any event, we agree with defendants' contentions resisting the motion.

Poulsens also argue defendants have accepted the trial court judgment and thereby waived their right to appeal therefrom. There has been a definite trend in Iowa away from the harsh rule that acceptance of a judgment invariably waives the right to appeal. *See, e.g., Starke v. Horak*, 260 N.W.2d 406, 407–08 (Iowa 1977); *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 683 (Iowa 1977); *In re Marriage of Abild*, 243 N.W.2d 541, 543 (Iowa 1976).

This motion to dismiss the appeal is also overruled.

III. *Burden of proof on breach of fiduciary duty.* One of Poulsens' claims for damages was for Russell's breach of his fiduciary duty. The court instructed the jury that since a fiduciary relationship existed, Russell "has the burden of proof to show that he did not violate his fiduciary duties ...." While conceding that the parties were in a fiduciary relationship, Russell contends that the court improperly placed the burden of proof on him to show that he did not breach his duty.

Unless objected to by a party, an instruction to the jury, right or wrong, is the law of the case. *Froman v. Perrin*, 213 N.W.2d 684, 689 (Iowa 1973). Russell did not alert the trial court to what is now claimed as error. There was no objection to the instruction on burden of proof for breach of fiduciary duty. Poulsens' attorney objected to the instruction because he wanted to also place the burden on Russell to show that there were no damages to Poulsens. In response to this objection, defendants' attorney told the court, "We believe a correct statement of the law to be as stated [in the instruction] . . . ." We will not consider claims of allegedly erroneous instructions that are raised for the first time on appeal. Iowa R.Civ.P. 196.

IV. *Sufficiency of evidence of breach of fiduciary duty.* The jury returned a verdict in favor of the Poulsens for $83,545 for damages from Gordon Russell's breach of fiduciary duty. Russell says that the evidence was insufficient to submit the various claims of breach of fiduciary duty to the jury. We find substantial evidence in the record to establish a question for the trier of fact on whether Russell breached his fiduciary duty to the Poulsens.

In determining whether a jury question existed, we view the evidence in the light most favorable to the Poulsens. If there is substantial evidence in the record so that a reasonable trier of fact could find a breach of fiduciary duty, the jury's verdict is binding on us. *Northrup v. Miles Homes, Inc.*, 204 N.W.2d 850, 860 (Iowa 1973); Iowa R.App.P. 14(f)(1).

Poulsens claimed that Russell breached his fiduciary duty in four ways, resulting in the corporate cash flow drying up and Poulsens being forced out of the business. First, they alleged that Russell forced the closing of Paul's Texaco gas station in early 1975 even though Paul Poulsen did not want to close it. Russell claims that the evidence to support submitting this issue to the jury was insubstantial because Carmen Poulsen agreed that it should be closed to enable Paul to spend more time on other businesses. There was other evi-

dence, however, that Paul Poulsen did not want to close the station because it complemented the other businesses and was profitable. A reasonable juror could find that Russell breached his fiduciary duty by requiring closing of the station.

Poulsens also claimed that Russell breached his fiduciary duty by selling the wreckers that were used in Paul's Towing and using all of the proceeds to reduce the corporation's debt rather than using some of it as operating capital for the salvage business. Russell says this claim should not have gone to the jury because both Russell and Carmen Poulsen thought the towing business was taking too much of Paul's time. Paul was on call twenty-four hours a day with this business. To support the claim for breach of fiduciary duty, there was evidence that despite a desire to sell the two trucks, Russell was one of the purchasers. Further, only after the sale was made was it disclosed to Poulsens that Russell was one of the buyers. Poulsen also testified that he told his wife he did not want to sell the wreckers. He had taken steps to decrease the time demands from the towing operation. Paul also wanted to keep part of the proceeds as operating capital. The towing business generated a $3000 per month cash flow that assisted in operation of the car-crushing business. The record establishes a question of fact for the jury.

The third act of breach of fiduciary duty was Russell's additional stifling of corporate operating capital. Poulsens alleged, and the jury found, that Russell refused in his capacity as an officer of the corporation to borrow money to keep the businesses operating. Russell says that there is no evidence that Russell refused to sign notes as an officer of the corporation even though he did refuse to guarantee any more loans personally. Russell claims that any note from a bank had to be signed with him liable personally. To support submitting this issue to the jury, Poulsen introduced evidence that even though there was no pressure from the bank, Russell used all of the proceeds from the sale of the two trucks

to reduce the balance due the bank. Poulsen testified that he needed some of this money as operating capital for the salvage business. While Russell testified that he assumed that any note he signed would result in his personal liability, there was evidence that he refused to sign because he felt Poulsen should generate operating capital by crushing cars, although the weather was quite cold. It was for the jury to decide why Russell refused to sign as president.

Poulsens' final claim for breach of fiduciary duty relates to the final meeting in January 1977 where Russell bought Poulsens' interest. Russell claims that the breakup was precipitated by Paul Poulsen's absence from the salvage business and that Russell conducted himself with utmost good faith at the final meeting. Poulsen introduced evidence that he was informed of the meeting only hours before it took place. He also testified that Russell told him that he would have to raise the money to buy out Russell and relieve Russell of his personal obligations before 8:30 a. m. the next day. The alternative was for Poulsens to sell out to Russell for $5500. Again, it was a jury question whether the events leading up to Russell's buy-out of Poulsens breached Russell's fiduciary duty.

There was no error in the court's submitting the various claims of breach of fiduciary duty to the jury.

V. *Sufficiency of evidence of actual and punitive damages for breach of fiduciary duty.* Russell says that the evidence of damages is insufficient to support the jury award of $83,545 in actual damages and $200,000 punitive damages for Russell's breach of fiduciary duty.

■ To support an award of actual damages, the plaintiff must prove that damages have been sustained. *Patterson v. Patterson,* 189 N.W.2d 601, 605 (Iowa 1971). Actual damages are recoverable unless it is speculative whether damages have been sustained. *Id.* We conclude that Poulsens have established a basis for finding the existence and amount of damages for each of the breaches of fiduciary duty by Russell.

■ Russell contends that Poulsens did not suffer any damages from the closing of the gas station because there was no evidence that it was making money or had any value as a going concern. To support a finding of damages from the closing, there was evidence that the lease with Texaco was in Poulsens' name and that the station was paying its bills and a salary to Poulsen. Poulsen testified that he had a good mechanic and was trying to build a service business around him. After expenses, the station made $11,000 during its operation and had a financial statement equity of $32,000.

Russell says that the evidence of damages from the sale of the tow trucks is insubstantial because Poulsen acquiesced in the $30,000 sale price. The evidence to support the finding of damages includes testimony that the towing business was paying its bills and a salary to Poulsen and had a $3000 monthly cash flow. One of its customers was the Iowa City Police Department. This is sufficient to allow a jury to find damages.

Finally, the evidence is sufficient to support an award of damages for Russell's breach of fiduciary duty in the events surrounding the last meeting. The salvage business was the last going concern in which Poulsen had an interest. There was evidence that the $5500 paid to Poulsen did not accurately reflect the value of his interest in the remaining business. This interest was computed by an accountant that plaintiffs claimed was under Russell's control. It was for the jury to determine the value of Poulsens' interest in this going business.

■ The jury also awarded Poulsens $200,000 punitive damages. Russell contends there is no substantial evidence to support this award and that it was a result of the jury's passion and prejudice. Part of his claim is that an award of punitive damages is improper because there were no actual damages and because reputation testimony was erroneously admitted. Since we conclude that evidence of actual damages existed and there was no error in

admitting the reputation testimony, these arguments are not persuasive. It was for the jury to decide whether Russell's improper acts were done willfully or in reckless disregard of Poulsens' rights. *Meyer v. Nottger*, 241 N.W.2d 911, 922 (Iowa 1976). There was evidence that Russell's net worth was almost six million dollars. The amount of punitive damages needed to punish Russell and deter others is for the jury's discretion. *Northrup*, 204 N.W.2d at 861.

VI. *Admission of reputation testimony.* Russell claims the court improperly admitted plaintiffs' evidence in the jury trial concerning defendant's business dealings and reputation. A witness for Russell had testified that Russell's reputation in the Johnson County area for honesty and integrity was good. In rebuttal one of Poulsens' witnesses, Dick Hobbs, testified about specific business dealings he had with Russell while four other witnesses testified that Russell's reputation for honesty and integrity was bad. We conclude no error was preserved relative to this evidence.

Hobbs started to testify about his relationship with Russell in their partnership of a towing business. Russell made a general objection on the grounds of lack of relevancy, materiality and competency. Poulsens' counsel stated that the proposed testimony was evidence of similar acts by Russell. Defendant next made a specific objection claiming there was no foundation that the Hobbs-Russell relationship was similar to the Poulsen-Russell relationship. The court sustained the foundation objection. Plaintiffs then laid the proper foundation. No further objection was made by defendant as Hobbs testified about the deterioration of his relationship with Russell. Defendant never asked for a ruling on the prior general objection and thereby waived it. *Bahnsen v. Rabe*, 276 N.W.2d 413, 416 (Iowa 1979).

On the admission of the other four witnesses' testimony, defendant has not preserved any error for our review. Defendant did object to this testimony but only on the grounds that there was not a proper foundation to allow some of the witnesses to testify about Russell's reputation for honesty and integrity. *State v. Hobbs*, 172 N.W.2d 268 (Iowa 1969). Once foundation was established, the witnesses testified without further objection. Without a proper objection, we have no issue to decide on appeal. *State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977).

VII. *Submission of claim for intentional infliction of emotional distress.* The court submitted to the jury Paul Poulsen's claim for intentional infliction of emotional distress by Gordon Russell. The jury returned a verdict for Poulsen for $24,000 and judgment was entered thereon. Russell claims that the evidence was insufficient to allow this claim to go to the jury. We agree and conclude that Poulsen failed to establish a prima facie case of severe emotional distress.

The elements of the tort of intentional infliction of severe emotional distress were listed in *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252, 255 (Iowa 1972). As the court instructed the jury, plaintiff establishes a claim by showing, "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Id.* Russell says that Poulsen did not make out a prima facie case because Poulsen failed to show that Russell's conduct was outrageous or that Poulsen's distress was severe and extreme.

In ruling on Russell's motion for directed verdict or to withdraw this issue from the jury, the court must view the evidence in the light most favorable to Poulsen. *B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). The trial court first determines whether the plaintiff has presented substantial evidence on each element of the claim to determine if a reasonable trier of fact could find for the plaintiff. *Id.; Davis v. First National Bank of Arizona*, 124 Ariz.

458, 462, 605 P.2d 37, 41 (Ct.App.1979); Restatement (Second) of Torts § 46, Comments h, j (1965).

The evidence on Poulsen's mental distress was in the form of testimony from Poulsen and John Lee. This testimony related solely to Poulsen's distress in January 1977 after his relationship with Russell had ended. Lee testified about his twenty-five-year friendship with Poulsen and his observations of Poulsen a few days after Poulsen sold his interest to Russell. Lee stated that Poulsen "was very, very down," "was feeling super badly" and "felt that he lost everything." These feelings continued "at least a month or two." Poulsen testified that after he sold out he "was very disappointed" and did not know how he and his family "were going to make ends meet."

■ Emotional distress "includes all highly unpleasant mental reactions." Restatement (Second) of Torts § 46, Comment j. It is only when it is extreme or severe that it is compensable. *Id.* Our prior cases have not extensively discussed this element to decide when a prima facie case has been established. The distress does not have to manifest itself physically. *Meyer,* 241 N.W.2d at 918; Restatement (Second) of Torts § 46, Comment k. In some cases the outrageousness of the defendant's conduct may be enough evidence that the distress is severe. Restatement (Second) of Torts § 46, Comment j.

■ On the facts of this case, we conclude that Poulsen has failed to present substantial evidence of severe and extreme emotional distress upon which a reasonable trier of fact could conclude that he had established this element. Our prior cases indicate that the plaintiff must present more evidence than that he felt bad for a month. *E.g., Meyer,* 241 N.W.2d at 915–16 (sufficient evidence to go before jury where plaintiff was nauseous, had difficulty breathing, and suffered acute myocardio ischemia); *Northrup,* 204 N.W.2d at 855 (substantial evidence of distress where plaintiff cried, lost weight, suffered abdominal cramps); *Blakeley v. Shortal's Estate,* 236 Iowa 787, 20 N.W.2d 28 (1945) (plaintiff had difficulty sleeping, was nervous, restless, and did not return to scene of tort for some time).

The only evidence Poulsen presented was about his distress at the ending of the relationship. There is no evidence of any distress during the deterioration of the relationship. While he was understandably upset over selling out to Russell, he has not presented substantial evidence of severe emotional distress. *See Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 155 (Me.1979) (plaintiff's testimony that he felt "kind of down," "mad," and "nervous for about a month" not substantial evidence of severe emotional distress); *Harris v. Jones,* 281 Md. 560, 572, 380 A.2d 611, 617, 86 A.L.R.3d 441, 453 (1977) (testimony that plaintiff was "shaken up" and felt "like going into a hole and hide" not sufficient). For most members of the community, especially those engaged in life in the commercial world, "a certain toughening of the mental hide is better protection than the law could ever be." Margruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv.L. Rev. 1033, 1035 (1936). *See Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 850, 606 P.2d 944, 954 (1980).

Because there was no substantial evidence that Poulsen sustained severe or extreme emotional distress resulting from defendant's actions, we hold the trial court erred in submitting Poulsen's claim of intentional infliction of emotional distress to the jury.

VIII. *Interest rate on plaintiffs' judgment.* Poulsens have moved this court to set the interest on their judgment at the current applicable market rate pending disposition of the appeal and thus save plaintiffs from economic harm. The motion was submitted with the appeal.

■ The statutory rate on plaintiffs' judgment, entered February 20, 1979, is seven percent per year. § 535.3, The Code 1979. Plaintiffs point out that the current commercial lending rate is at least double that statutory rate. Plaintiffs further say defendants took this appeal to delay pay-

ment of the judgment as a money-saving device. Poulsens cite no authority to support their argument for interest above the statutory rate which we deem waived. Iowa R.App.P. 14(a)(3). We note that for judgments entered after January 1, 1981, the general interest rate thereon has been raised by the legislature to ten percent per year. 1980 Session, 68th G.A., ch. 1170.

Plaintiffs' motion is overruled.

IX. *Reformation of land contract.* In the summer of 1974, the parties learned they would have to relocate their car-crushing business and salvage yard. Russell suggests that they try to acquire a forty-acre tract (Stevens tract), which Russell was selling on contract to Stevens. Russell was able to reacquire the Stevens tract by canceling the $94,000 still owing on the contract and agreeing to pay $22,500 in cash for a building and scales Stevens had erected on the land.

Once Russells reacquired the land, they began negotiating to sell it to Poulsens. On October 31, 1974, the parties signed an installment sales contract which stated Poulsens purchased "an undivided one half (½) interest" in the forty acres for $94,000. This contract was recorded in December 1974 after it was certain that the land would be rezoned by Iowa City to allow relocation of the car-crushing business. The land was then leased to the corporation.

Poulsens claimed at trial that the real estate installment contract did not accurately reflect the actual agreement of the parties. They claimed that through their mistake and the fraud or inequitable conduct of Gordon Russell, the contract did not correctly reduce their agreement to writing. Poulsens contended the actual agreement of the parties was for Russells to sell to Poulsens the entire forty acres for $94,000.

The claim for reformation of the contract was tried in equity to the court. However, some overlapping evidence on this issue was presented to the jury when it tried the law issues. In answer to special interrogatories, which the court considered advisory, the jury found that Gordon Russell represented

that Russells would convey all forty acres to Poulsens and that Poulsens relied on these representations. After the equity trial to the court at which additional evidence was presented, the court, based on the evidence at both trials, decreed that the contract should be reformed to indicate a sale of the entire forty acres for $94,000. Russells assert this was error for several reasons.

■ The scope of our review of the contract reformation issue, which is in equity, is de novo. Iowa R.App.P. 4. In equity cases we give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ A. *Effect of discovery admissions.* Russells contend that the parties, during discovery, conclusively established that Russells and Poulsens each owned undivided one-half interests in the forty acres of land. During discovery, Poulsens asked Russells to admit that "the real estate would become the asset of two individual persons, Paul Poulsen and Gordon Russell, and wives." Russells admitted this. They therefore say that the ownership of the land was "conclusively established in the pending action." Iowa R.Civ.P. 128. We disagree. A request for admission, once admitted, only binds the party making the admission. The party requesting the admission is free to prove facts in addition to, or contrary to, the admission. *Champlin v. Oklahoma Furniture Manufacturing Co.*, 324 F.2d 74, 76 (10th Cir. 1963); *Black v. Palm Beach County*, 342 So.2d 1034, 1035 (Fla.App. 1977); C. Wright and A. Miller, *Federal Practice and Procedure* § 2264 (1970).

B. *Burden of proof.* The nature of Poulsens' claim for reformation is that Gordon Russell represented to them that they would be purchasing the entire forty acres and that was the agreement of the parties. Through the mistake of the Poulsens and the fraud or inequitable conduct of Russell, the signed documents do not accurately express this agreement. If proved, this would be grounds for reformation. *Schuknecht v. Western Mutual Insurance Co.*, 203 N.W.2d

605, 608 (Iowa 1973); *Walnut Street Baptist Church v. Oliphant*, 257 Iowa 879, 886, 135 N.W.2d 97, 101 (1965). There is no claim that the actual agreement was induced by fraud, only that the otherwise enforceable agreement was not properly expressed in writing. Poulsens contend the agreement is sound, but the writing fails to express it.

■ Ordinarily, a party seeking reformation of a written document must establish grounds for reformation by clear, satisfactory and convincing evidence. *McCarter v. Uban*, 166 N.W.2d 910, 912 (Iowa 1969); Iowa R.App.P. 14(f)(11). Requiring this high standard of proof helps ensure that a court granting reformation is merely changing the terms of a written document to reflect the agreement of the parties and not making a new agreement for them. *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975).

■ Although the parties disagree on who had the burden of proof on this reformation issue in view of the fact they had a fiduciary relationship, we conclude that the burden of proof is on Poulsens to establish by clear, satisfactory and convincing evidence their right to reformation. It is plaintiffs' burden of persuasion to establish what the actual agreement of the parties was. Unlike a case where we will cancel an agreement if the dominant party to a fiduciary or confidential relationship fails to overcome the presumption of fraud, *In re Estate of Herm*, 284 N.W.2d 191, 200 (Iowa 1979); *First National Bank v. Curran*, 206 N.W.2d 317, 322 (Iowa 1973); *Curtis v. Armagast*, 158 Iowa 507, 520, 138 N.W. 873, 878 (1913), here we are asked to put the parties in the position to which they agreed. It is the burden of the party requesting reformation to prove what that position was. The general rules on burden and standard of proof in reformation cases apply here. Iowa R.App.P. 14(f)(11).

C. *The evidence.* There was evidence to support the positions of both Poulsens and Russells on the reformation issue.

In addition to that previously mentioned, we will state some of the evidence on which they rely and some conflicts in that evidence. A May 1974 written agreement between Gordon Russell and Poulsen anticipated common ownership of any assets they might acquire in their business relationship. Poulsens signed the contract in October 1974 and received a copy of the recorded realty contract on December 13, 1974, but claimed they never read it carefully or understood it. The contract was drawn by attorney Jay Honohan who previously represented Russell, represented both parties and the corporation during the business relationship, and who represented Russells at the jury trial. Present appellate counsel represented defendants at the equity trial. Poulsens testified they relied on Gordon Russell, attorney Honohan, and their accountant to draw the contract and a later lease according to plaintiffs' agreement with Russell to purchase all of the land.

A signed, typed financial statement furnished by Paul Poulsen to a bank and prepared from a handwritten statement from Poulsen caused considerable controversy at the trials. The handwritten statement showed Poulsen owned "½ of" the forty acres. Poulsen testified the quoted portion was a forgery. Russells' evidence indicated it was not.

Attorney Honohan testified as a witness for Russells in the equity trial about meetings with Gordon Russell and Poulsen during the business relationship whereby Poulsen acknowledged he was buying only a one-half interest in the land.

Although the lease of the land, drawn by attorney Honohan, was from Russells and Poulsens to the corporation, the corporation paid the $850 monthly rental only to Poulsens, who then paid the same approximate monthly sum to Russells on the land contract. That evidence would indicate Poulsens owned the entire land. However, Russells' evidence was they would get a like amount of rent at some future time, although the corporate records did not so reflect. After the January 1977 buy-out of Poulsens by Russell, Poulsen consulted at-

torney John Hayek. Poulsen testified he told Hayek he was buying all the land. However, Hayek testified he had no recollection of such claim. Later Poulsens consulted attorney John Nolan, who has represented them at trial and on appeal.

Russells claim at least evidentiary value for the request for admissions plaintiffs posed to them and which they admitted. The Russells admitted that the land would be owned by the Russells and Poulsens. Russells say this indicates plaintiffs' state of mind on the ownership.

The gist of much of plaintiffs' evidence and their theory of the case was that Gordon Russell dominated the attorney and accountant into doing whatever was necessary to mislead and defraud plaintiffs from receiving the entire interest in the land. Accordingly, in plaintiffs' view, the testimony of the attorney and accountant was suspect. Plaintiffs testified the attorney did not explain the contract to them or even see them sign it although he notarized the document as if he saw them sign. Further, it was not until January 1977 that two friends of plaintiffs explained to them that the written contract was only for the purchase of a one-half interest in the land.

Poulsens both testified that Gordon Russell agreed to sell the forty acres to them at defendants' cost of $94,000. On cross-examination, Gordon Russell also admitted that Poulsens were to pay the entire $22,500 that Russell owed Stevens for the building and scales put on the land by Stevens. That also would be consistent with plaintiffs getting all the rent from the corporation because plaintiffs were buying all the land.

Recitation of further evidence pro and con would unduly extend this opinion. We agree with the following summary from the trial court's findings and conclusions:

There was sharply conflicting evidence as to the agreement and whether or not Plaintiffs knew that they were only getting a one-half interest in the real estate contract.

The Court submitted an interrogatory to the jury which the jury answered in the affirmative that Gordon Russell made representations that he would convey sole ownership of the entire 40 acres and in a subsequent interrogatory answered yes, in answer to the question whether Paul and Carmen Poulsen established . . . that they relied on said representations and were deceived in believing that they would receive sole ownership in the entire 40 acres when they executed the contract.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Plaintiffs, Paul and Carmen Poulsen, are not astute business people nor do they have a good understanding of business principles as far as real estate transactions are concerned. Defendant, Gordon Russell, is very adept with his business knowledge, even though he is self-educated, and used the services of his own attorney and accountant on all of these transactions.

In the final analysis, the determination of fact in this case depends on the credibility of the witnesses, and this Court does not disagree with the answers given on the interrogatories by the jury and adopts the same as a part of this finding of fact.

Defendant has presented a substantial quantity of evidence showing contradictions and inconsistencies. However, when the agreements were made on the real estate, only Poulsens and Russell were present. When the instruments were drawn, they were under the direction and supervision of Russell with people that owed their allegiance to him and were done with Poulsens relying upon Russell to treat them fairly.

The lease contains the names of all parties to this suit as lessors. It also was drawn by the attorney who was not present when the real estate contract was agreed upon. He drew it under the direction of Gordon Russell and the accountant and naturally drew it consistent with the land contract.

■ Giving appropriate weight to the findings, conclusions, and result reached by the trial court, especially when considering

credibility of witnesses, we hold in our de novo review that Poulsens proved by clear, satisfactory and convincing evidence that the real estate contract is fraudulent. They proved that in the written agreement Poulsens were purchasing a one-half interest when the true agreement was that Poulsens were purchasing the entire forty acres. The trial court properly reformed the contract and the the lease to reflect the true agreement between Poulsens and Russells.

Other portions of the trial court's decree requiring Poulsens to pay $22,500 for the scales and office building on the land are not challenged on appeal and therefore remain as previously ordered.

The trial court result is affirmed on the reformation issue.

X. *Printing cost.* By prior order we submitted with the appeal consideration of whether the cost of printing the second supplemental appendix should be taxed to plaintiffs without regard to the outcome of the appeal. In skirmishing and disagreement between the parties on the adequacy of the appendix, this issue arose.

After reviewing the entire record, we now order this printing expense taxed as part of the general costs of the appeal. Iowa R.App.P. 16(c).

We have considered all the contentions made by the parties, whether specifically discussed or not, and deem them without merit or unnecessary to our disposition of the case.

In summary, the trial court is reversed on its entry of judgment for plaintiff Paul Poulsen for intentional infliction of emotional distress and is affirmed on the balance of the case. Costs are taxed one-sixth to plaintiffs and five-sixths to defendants.

AFFIRMED IN PART AND RE-VERSED IN PART.

All justices concur except LeGRAND, J., who dissents.

LeGRAND, Justice (dissenting).

I dissent from Divisions IV, V, and IX(A) of the majority opinion and from the results which those divisions dictate.

Division IV deals with Gordon Russell's alleged breach of fiduciary duty. This issue was submitted on four separate theories. I believe there was substantial evidence on only one—the manner in which Russell bought out Poulsen in January 1977. The jury should have been limited to considering that matter only.

Because this inevitably affected the jury's award of both actual and punitive damages, I dissent also from Division V, which deals with the sufficiency of evidence on damages.

Division IX(A) discusses the effect of discovery admissions. Poulsen submitted a request for admissions, asking Russell to concede certain real estate "would become the asset of two individual persons, Paul Poulsen and Gordon Russell." Russell admitted this. At trial, Poulsen claimed—successfully—that he owned *all* of this real estate. Russell asserts title was conclusively settled by the earlier request and admission. *See* rule 128, Iowa R.Civ.P. I, too, think it was.

The majority relies on the general rule that an admission is binding only on the party who makes it. This would seem to require no great citation of authority. I do not dispute the rule, only its application to these facts.

Here the very request was an admission and should be so treated. Poulsen conceded they each owned an interest in the realty by asking Russell to make that admission. How can this be treated as an admission by Russell but not by Poulsen?

Aside from the fact the authorities cited are distinguishable because they did not contemplate the circumstances facing us, there is a matter of elementary fairness to be considered, particularly when Poulsen is himself demanding exemplary conduct from Russell. How does Russell prepare to defend against a claim which, by Poulsen's admission, does not exist? If Poulsen agrees that each own an interest in the property, as the contract itself provided, then there is no issue as to title to real estate. Russell was justified in relying on

this. This is the very purpose of rule 128, Iowa R.Civ.P., which I believe should control the case. The result reached by the majority is unfair and unwarranted.